FILED

NOV - 4 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

GEORGE G. CALLAHAN,
523 - 20th Street, N.W., Apt. 108
Washington, D.C. 20006-5027,
(202) 347-1668

Plaintiff,

v.

GALE A. NORTON,
Secretary,
U.S. DEPARTMENT OF THE INTERIOR
1849 C Street, N.W.
Washington, D.C. 20240,

Defendant.

CASE NUMBER 1:05CV02170

JUDGE: Reggie B. Walton

DECK TYPE: Employment Discrimination

DATE STAMP: 11/04/2005

JURY ACTION

COMPLAINT

(For Retaliatory Discrimination and Reprisal Due to Plaintiff's Prior EEO Activity

1. This is an action alleging that the defendant discriminated against plaintiff on the basis of retaliation and reprisal for plaintiff's prior EEO activity arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621, et seq.

2. Venue is appropriate in this Court because plaintiff has been employed by the defendant in the District of Columbia, and all of the acts and practices alleged occurred in the District of Columbia.

3. Plaintiff, George G. Callahan, is a resident of the District of Columbia and is employed as a Park Ranger, GS-0025-5, with the National Park Service, National Capital Region in Washington, D.C.

4. The defendant Secretary of the Interior is the head of the agency in which plaintiff has been employed. Defendant is sued in her official capacity only.

Facts

5. Plaintiff began doing work for the National Capital Park Service as a volunteer in 1991. He first worked at the Visitor's Information Center near the Washington Monument and then at the Vietnam Veterans' Memorial, weekly for about 20 hours a week, from 1991 until he was hired as a seasonal ranger. After his term as a seasonal ranger plaintiff continued to work as a volunteer and received complimentary letters of recommendation and commendation for his work.

6. In 1994 he was hired as a seasonal Park Ranger on the Mall from approximately April through August, and again received a highly complimentary letter of recommendation for his work from his supervisor, who pointed out that plaintiff interacted with several thousand visitors per shift and praised his interaction with the public and development as a ranger, including his becoming able to present detailed and instructive in depth interpretive programs to park visitors.

7. After serving as a seasonal ranger, plaintiff applied for a permanent position as a ranger on the Mall, but was not among those applicants hired, all of whom were much younger than he. For this reason he filed an EEO complaint on the basis of age discrimination, which resulted in a settlement with the defendant's agency.

8. Under the settlement agreement the plaintiff was hired as an interpretive park ranger, GS-4, step 4, on the Mall, with the understanding that he would be promoted to grade GS-5 within 90 days and would be placed in a career ladder position in which he could move from a grade GS-5 to a GS-7 and GS-9 position, with the requirement of at least one year in grade for promotion.

9. Accordingly, plaintiff was appointed as a GS-4, step 4 on July 20, 1998, and 90 days thereafter, on October 20, 1998, he was promoted to GS-5, step 4. At the time of his promotion to GS-5 he received an evaluation of "achieved."

10. As a GS-4 ranger on the Mall plaintiff covered all sites on the Mall and gave interpretive talks. He was given research time to broaden his talks and learn more about the information he was giving. When he became a GS-5 his work did not essentially change.

11. Upon becoming a GS-5 plaintiff was not advised as to what would be required of him to become a GS-7, although he was told that he was supposed to have an interpretive talk by him

audited yearly by his supervisor, and while a GS-4 he did receive such an audit.

12. At the end of his first year of employment as a GS-5, in October 1999, plaintiff was evaluated as "achieved." As of that time he understood that to be promoted he had to have received "achieved" on his yearly evaluation, have performed the duties that all other rangers performed as far as giving regular interpretive programs and living up to the standards of his position as they had been explained to him. To his knowledge he was eligible for promotion, but he was not promoted and remained a GS-5.

13. Thereafter, in October or November 1999, plaintiff approached Duane Erwin, who was then his supervisor, about being promoted and Mr. Erwin told plaintiff that he would look into it. Plaintiff subsequently asked again about his promotion and his supervisor said he had not gotten around to it. He approached his supervisor three or four more times without an answer and at about the fifth time he was told that promotion was not required by his EEO settlement agreement. At various times thereafter he was also told that he had taken off too much time from work (because of illness and treatment for cancer), that he had to do an educational program, and interpretive logs were also mentioned. In fact, prior to finally complaining to an EEO Counselor late in 2000, plaintiff was never given the same

answer by his supervisor as to the requirements for his promotion.

14. Finally on December 1, 2000, plaintiff filed an EEOC complaint alleging retaliatory discrimination for his prior EEO activity, after having consulted an EEO counselor in August 2000 because of his failure to be promoted, and also because of the agency's continuous classification of him as AWOL when he had been on approved leave for cancer treatment, and for offsets from his salary which he did not understand.

15. It was only after plaintiff had complained to the EEO counselor, and after he had remained a GS-5 for over two years, that plaintiff's supervisor, Mr. Erwin, finally gave plaintiff a memo specifying what would be considered necessary for plaintiff to be promoted; namely, to be audited giving a formal interpretive talk which was approved by his supervisor and to create eight written narratives of informal contacts with park visitors.

16. After plaintiff had received said memo in November 2000, plaintiff's supervisor, Duane Erwin, finally, for the first time, asked plaintiff about an appointment to audit an interpretive talk by plaintiff and plaintiff told him to do it any time he felt like it; however, plaintiff's supervisor did not perform such an audit of a talk by plaintiff until May 2002. Plaintiff had never turned down an opportunity for such an audit and this was the first time that Mr. Erwin had given plaintiff an opportunity to have a talk audited. The audit report shows that plaintiff's presentation was successful and, in fact, was described as "outstanding."

17. Meanwhile as a GS-5 in 1998-99, 2000 and thereafter, plaintiff has given interpretive talks at all Mall sites and walking tours. When required he did approximately three to five site checklists a week and has given both informal interpretive talks and formal timed talks numerous times. He has served as lead ranger many times, often over GS-9's and his yearly job evaluations have always rated his job objectives as "achieved." There are, to his knowledge, no other rangers on the Mall who are still GS-5's, nor, to his knowledge, does the agency now even hire rangers for permanent positions on the Mall at the GS-5 level.

18. The agency claimed in response to plaintiff's EEO complaint that plaintiff had not completed requirements necessary for his promotion to GS-7; namely, an interpretive talk audited and approved by a supervisor and eight informal logs of contacts with visitors. However, such claim is allegedly based on an agreement reached between the defendant's agency and the union in early 2000. Such requirements were not in effect when plaintiff became eligible for promotion from GS-5 to GS-7 in October 1999, nor was such union agreement ever reduced to writing.

19. Moreover, as alleged above, in spite of the many interpretive talks plaintiff had given in the course of his job, plaintiff was not given the opportunity to have a talk audited by his supervisor until May 2002, after he had been in grade GS-5

for over three years (sufficient time for him to have been promoted to a GS-9 grade).

20. Also, as previously alleged, plaintiff remains the only permanently employed ranger on the Mall who is a GS-5 rather than a GS-7 or GS-9; and he has received information indicating that since he became eligible for promotion from grade GS-5 in October 1999, at least 15 park rangers on the Mall have been promoted from grade GS-5 without being required to submit informal logs of contacts with visitors -- a requirement claimed by the agency to be have been necessary for plaintiff's promotion.

21. In fact, shortly after plaintiff completed his first year as a GS-5 in October 1999, the Regional Director of the National Capital Region advised, in a memorandum dated December 20, 1999, that to qualify for promotion from the GS-5 to 7 and 9 level, an employee ranger must meet the Office of Personnel Management standards for his job and have worked one year at the next lower level, but that while submission of a formal interpretive talk and logs of informal contacts were desirable, these were not requirements for promotion. Thus when plaintiff became eligible for promotion in 1999 the requirements for promotion relied upon by defendant's agency as preventing plaintiff's promotion were not considered mandatory for promotion by the Regional Director.

Exhaustion of Remedies

22. On August 20, 2000, plaintiff contacted an agency EEO counselor, and thereafter in December, 2000, he filed a formal complaint of discrimination against the agency, alleging that since resolution of his EEOC complaint regarding age discrimination in a previous case, Callahan v. Interior , EEOC No. 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X, he had been subjected to ongoing reprisals and retaliatory conduct by agency personnel; namely, ongoing discriminatory failure to promote him, ongoing and unfairly charging him with AWOL while he was being treated for cancer, and ongoing and wrongful offsets from his wages. Plaintiff's claims were accepted for investigation and upon completion of the investigation plaintiff requested a hearing before an EEOC Administrative Judge.

23. The agency moved for summary judgment in the administrative hearing action, which was denied, and a hearing was held on February 3, 2004. Prior to the hearing the agency had corrected the AWOL on plaintiff's records to show Leave Without Pay, thus removing that issue from the case. On March 4, 2004, the Administrative Judge issued a decision in which she found that the plaintiff had established a prima facie case of reprisal, but that the agency had articulated legitimate reasons for its actions, and she ruled against plaintiff. Plaintiff appealed to the U.S. Equal Opportunity Commission regarding the issue of failure to promote, and on August 3, 2005 the Commission issued and mailed

to plaintiff a decision affirming the Administrative Judge's finding and advising that plaintiff had a right to file a civil action within 90 days of receipt of the EEOC's decision, with 5 days allowed for receipt after mailing (i.e., by November 6, 2005). (See attached EEOC letter.)

Plaintiff's Cause of Action for Reprisal

24. Plaintiff has been subjected to a continuing pattern of illegal retaliatory and discriminatory conduct by defendant's agency in reprisal for his EEO complaint against the agency under the Age Discrimination in Employment Act. Said course of conduct consists of, but is not limited to, the following: The agency has failed to promote plaintiff (who is in a career-ladder position he achieved through his EEO complaint) from grade GS-5, which he has occupied for over six years while receiving successful job appraisals each year; all other permanent ranger employees on the Mall have been promoted from grade GS-5 to grade GS-7 or 9 and plaintiff remains the only permanent employee ranger who is a GS-5; the agency no longer even hires permanent employees such as plaintiff below the GS-7 level. Plaintiff's supervisor, who was aware of plaintiff's prior EEO complaint, took more than a year to answer plaintiff's numerous inquiries about what was required for plaintiff to be promoted, and to inform plaintiff of the requirements which the agency now claims as mandatory for plaintiff's promotion; and although plaintiff's supervisor finally

advised plaintiff, in November 2000, that he must give a formal talk audited and approved by his supervisor in order to be promoted, plaintiff was not given an opportunity for such an audit until May 2002, even though plaintiff remained ready and invited such an audit at any time; further, although plaintiff was told that to be promoted he must submit logs of informal contacts with visitors, other rangers have been promoted without submitting such logs. In fact, the requirements for plaintiff's promotion now relied upon by the agency not only have not been observed consistently, but were not mandatory in October 1999 when plaintiff had satisfactorily fulfilled a year in grade as a GS-5 and tried unsuccessfully to find out from his supervisor what was necessary for his promotion, nor have the requirements for promotion claimed by the agency pursuant to a union agreement been reduced to writing. In addition, in engaging in such conduct toward the plaintiff, the agency was well aware that the plaintiff had become ill with cancer and was trying to work while undergoing medical treatment and discomfort which the agency's conduct made it even more difficult for plaintiff to undergo.

WHEREFORE, plaintiff prays that this Court

a. Enter judgment for plaintiff against defendant;

b. Declare that defendant violated plaintiff's rights under the Age Discrimination in Employment Act;

c. Enjoin defendant from further violating plaintiff's rights;

d. Order plaintiff's retroactive promotion with back pay and all benefits he should have received;

e. Award plaintiff such other and further legal and equitable relief as this Court deems just and proper.

Jury Demand

Plaintiff demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

GEORGE G. CALLAHAN
Plaintiff Pro Se



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, D.C. 20036**

George G. Callahan,
Complainant,

v.

Gale A. Norton,
Secretary,
Department of the Interior,
(National Park Service),
Agency.

Appeal No. 01A43807

Agency No. FNP-01-018

Hearing No. 100-2001-07992X

DECISION

JURISDICTION

On May 18, 2004, complainant filed an appeal from the agency's final order concerning his equal employment opportunity (EEO) complaint of unlawful employment discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 *et seq*.

Following the agency's final order, complainant filed a timely appeal which the Commission accepts pursuant to 29 C.F.R. § 1614.405(a). On appeal, complainant requests that the Commission reverse the agency's acceptance and implementation of an EEOC Administrative Judge's (AJ) finding of no discrimination in violation of the ADEA. For the following reasons, the Commission AFFIRMS the agency's final order.

BACKGROUND

05 2170

At the time of events giving rise to this complaint, complainant was a Park Ranger, GS-0025-5, with the National Park Service, National Capital Region, Washington, D.C. Complainant began work with the agency as a volunteer in 1991 and was hired as a seasonal Park Ranger in 1994. After the 1994 season ended, he returned to work as a volunteer. Thereafter, he applied for a position as a Park Ranger, GS-4, and was not selected. He filed an EEO complaint on the basis of age discrimination which was resolved in June of 1998 and as a result of the EEO settlement,

FILED

NOV - 4 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

after 90 days as a GS-4 Park Ranger, he was placed on a GS-5/7/9 career ladder as a GS-5 in October of 1998. Complainant testified that the agency was obliged to promote him to the GS-7 level in October of 1999, because he had been in grade for one year and new standards for career ladder promotion were not placed in effect until February of 2000 as a part of an agreement with the union.

Complainant's supervisor stated that complainant was not promoted to the GS-7 level because he had not met the agency requirements for being promoted. The record reveals that the agency career ladder standards, issued September 1991, stated that career ladder promotions are, "not automatic or mandatory." The Administrative Officer testified that during 1999, there were numerous grievances filed regarding inconsistencies in Park Rangers career ladder promotions and some supervisors would not promote Park Rangers unless they had performed a formal talk that was taped and certified as correct by a certifier in Harper's Ferry, West Virginia. The agency negotiated new standards for career ladder promotions with the union which began in February 2000. Under the new standards, to advance from GS-5 to GS-7 required one year performing relevant duties at the GS-5 level, possessing sound interpersonal skills and completing an informal presentation (consisting of eight interpretative logs), a formal presentation and site checklists. The record reveals that as of May of 2002, complainant had finished his formal portion of the requirements but complainant conceded that he has never completed the informal portion of the requirements.

The record reveals that complainant missed extended periods of work due to illness, and the agency stated that he was erroneously paid for time he was not at work. Thereafter, the agency amended his time sheets and notified him that his pay was to be offset to correct the time sheet errors. Complainant contended that he received two offsets for the time period December 19, 1999, to January 1, 2000. He testified that he was at work during that time he had his pay offset. However, the supervisory logs reveal that complainant was absent during this period.

On August 29, 2000, complainant contacted an EEO counselor and filed a formal EEO complaint on December 11, 2000, alleging that the agency discriminated against him on the basis of reprisal for prior EEO activity (arising under the ADEA)when:

(1) he was not promoted to the GS-7 level; and,

(2) his wages were improperly offset.

At the conclusion of the investigation, complainant received a copy of the investigative report and requested a hearing before an EEOC Administrative Judge (AJ). Following a hearing, the AJ issued a decision finding no discrimination.

The AJ concluded that complainant established a *prima facie* case of reprisal because his supervisor was aware of his prior EEO activity and his denial of promotion took place within a year of his gaining knowledge of the prior EEO activity. Further, the AJ found that a *prima facie*

case of reprisal could be established with respect to the salary offsets because they would be a continuation of a pattern of discrimination that began with the agency's denial of his promotion.

The AJ further concluded that the agency articulated legitimate, nondiscriminatory reasons for its actions. The AJ found that the agency stated that promotions were not automatic since there were requirements that Park Rangers needed to meet to be promoted from GS-5 to GS-7 which complainant did not meet. The AJ found that the agency stated that complainant was paid for days he was absent and in non-pay status, and his pay was offset for this reason.

The AJ found that complainant did not establish that more likely than not, the agency's articulated reasons were a pretext to mask unlawful retaliation. In reaching this conclusion, the AJ found that complainant had not shown that he had completed the requirements necessary to be promoted to the GS-07 level either before the February 2000, union agreement or afterwards. While the AJ found that there was confusion in the agency in late 1999 as to whether Park Rangers had to be certified by a certifier in Harpers Ferry, West Virginia, in order to be promoted on the career ladder, complainant still did not meet the requirements of the formal talk or information presentation (eight interpretative logs) at that time. In fact, he found that complainant had admitted he never completed the informal log requirements.

With respect to the offset of his pay, the AJ found that complainant argued that the agency did not produce the sign-in sheets for that period. However, the AJ noted that the agency produced the supervisor's log and leave requests showing that complainant was absent during the period in question.

## FINAL AGENCY ACTION

The agency's final order accepted the AJ's finding that complainant was not discriminated against or subjected to a hostile work environment on the basis of reprisal. The agency's final order implemented the AJ's decision.

## CONTENTIONS ON APPEAL

The complainant contends that the AJ erred in that, at the time he was eligible for promotion, the agency did not have any performance requirements for promotion from GS-5 to GS-7 in the Park Ranger position. Complainant states that he is not pressing his claim as to improper withholdings from his salary. The agency contends that complainant has submitted no new facts and that the AJ decision did not misapply relevant case law. The agency requests that we affirm its final order.

## STANDARD OF REVIEW

Pursuant to 29 C.F.R. § 1614.405(a), all post-hearing factual findings by an AJ will be upheld if supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal*

*Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477 (1951) (citation omitted). A finding regarding whether or not discriminatory intent existed is a factual finding. *See Pullman-Standard Co. v. Swint*, 456 U.S. 273, 293 (1982). An AJ's conclusions of law are subject to a *de novo* standard of review, whether or not a hearing was held.

ANALYSIS AND FINDINGS

Complainant can establish a *prima facie* case of reprisal discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination. *Shapiro v. Social Security Administration*, EEOC Request No. 05960403 (December 6, 1996) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Specifically, in a reprisal claim, according with the burdens set forth in *McDonnell Douglas*, *Hochstadt v. Worcester Foundation for Experimental Biology*, 425 F. Supp. 318, 324 (D. Mass.), *aff'd*, 545 F.2d 222 (1st Cir. 1976), and *Coffman v. Department of Veteran Affairs*, EEOC Request No. 05960473 (November 20, 1997), complainant may establish a *prima facie* case of reprisal by showing that: (1) he engaged in a protected activity; (2) the agency was aware of his protected activity; (3) subsequently, he was subjected to adverse treatment by the agency; and (4) a nexus exists between the protected activity and the adverse treatment. *Whitmire v. Department of the Air Force*, EEOC Appeal No. 01A00340 (September 26, 2000).

Assuming, *arguendo*, that complainant established a *prima facie* case of reprisal with respect to his being denied a promotion from GS-5 to GS-7, we find that the AJ correctly concluded that the agency articulated a legitimate, nondiscriminatory reason for its denial of complainant's promotion. The agency stated that career ladder promotions were not automatic and that complainant failed to meet the requirements for promotion under the old standards (prior to February 2000) as well as under the new standards implemented in February 2000.

While the complaint argues that there were no requirements for promotion prior to February of 2000, the record reveals otherwise. Career ladder promotions were not automatic or mandatory after the passage of one year as he contended. Only after obtaining the qualifications for promotion and the recommendation of their supervisor may a person be promoted up the career ladder. Further, testimony of record indicates that, prior to February 2000, the agency required that Park Rangers perform a formal talk and complete eight interpretative logs prior to being eligible for promotion from GS-5 to GS-7. While the record showed that there was some confusion and inconsistencies in promotion by managers over the implementation of the standards in late 1999, this does not establish that complainant was retaliated against. Complainant does not dispute that he never completed all the post-February 2000 requirements for promotion. The February 2000, agreement added more requirements which complainant never completed. We find that the AJ correctly found that complainant did not establish that more likely than not, the agency's articulated reasons were a pretext to mask unlawful retaliation.

With respect to issue (2), complainant does not raise this issue on appeal and so we decline to address it.

After a careful review of the record, the Commission finds that the AJ's findings of fact are supported by substantial evidence in the record, and that the AJ's decision referenced the appropriate regulations, policies, and laws. We conclude that complainant failed to present evidence that any of the agency's actions were in retaliation for complainant's prior EEO activity. We discern no basis to disturb the AJ's decision. Therefore, after a careful review of the record, including complainant's contentions on appeal, the agency's response, and arguments and evidence not specifically addressed in this decision, we affirm the agency's final order.

STATEMENT OF RIGHTS - ON APPEAL

RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action,

you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

Carlton M. Hadden

Carlton M. Hadden, Director
Office of Federal Operations

AUG - 3 2005

Date

**CERTIFICATE OF MAILING**

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:**

AUG - 3 2005

Date

H. Ward

Equal Opportunity Assistant