UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
GEORGE G. CALLAHAN,                     )
523 - 20th Street, N.W., Apt. 108       )
Washington, D.C. 20006-5027,            )
                                        )
                Plaintiff,              )
                                        )
v.                                      )   Civil Action No.
                                        )    05-2170 RBW
GALE A. NORTON,                         )
Secretary,                              )
U.S. DEPARTMENT OF THE INTERIOR         )
1849 C Street, N.W.                     )
Washington, D.C. 20240,                 )
                                        )
                Defendant.              )
```

AMENDED
COMPLAINT

(For Retaliatory Discrimination and
Reprisal Due to Plaintiff's Prior EEO Activity

1. This is an action alleging that the defendant discriminated against plaintiff on the basis of retaliation and reprisal for plaintiff's prior EEO activity arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621, et seq.

2. Venue is appropriate in this Court because plaintiff has been employed by the defendant in the District of Columbia, and all of the acts and practices alleged occurred in the District of Columbia.

3.  Plaintiff, George G. Callahan, is a resident of the District of Columbia and is employed as a Park Ranger, GS-0025-5, with the National Park Service, National Capital Region in Washington, D.C.

4.  The defendant Secretary of the Interior is the head of the agency in which plaintiff has been employed. Defendant is sued in her official capacity only.

<u>Count I</u>                               <u>Facts</u>

5.  Plaintiff began doing work for the National Capital Park Service as a volunteer in 1991. He first worked at the Visitor's Information Center near the Washington Monument and then at the Vietnam Veterans' Memorial, weekly for about 20 hours a week, from 1991 until he was hired as a seasonal ranger. After his term as a seasonal ranger plaintiff continued to work as a volunteer and received complimentary letters of recommendation and commendation for his work.

6.  In 1994 he was hired as a seasonal Park Ranger on the Mall from approximately April through August, and again received a highly complimentary letter of recommendation for his work from his supervisor, who pointed out that plaintiff interacted with several thousand visitors per shift and praised his interaction with the public and development as a ranger, including his becoming able to present detailed and instructive in depth interpretive programs to park visitors.

7. After serving as a seasonal ranger, plaintiff applied for a permanent position as a ranger on the Mall, but was not among those applicants hired, all of whom were much younger than he. For this reason he filed an EEO complaint on the basis of age discrimination, which resulted in a settlement with the defendant's agency.

8. Under the settlement agreement the plaintiff was hired as an interpretive park ranger, GS-4, step 4, on the Mall, with the understanding that he would be promoted to grade GS-5 within 90 days and would be placed in a career ladder position in which he could move from a grade GS-5 to a GS-7 and GS-9 position, with the requirement of at least one year in grade for promotion.

9. Accordingly, plaintiff was appointed as a GS-4, step 4 on July 20, 1998, and 90 days thereafter, on October 20, 1998, he was promoted to GS-5, step 4. At the time of his promotion to GS-5 he received an evaluation of "achieved."

10. As a GS-4 ranger on the Mall plaintiff covered all sites on the Mall and gave interpretive talks. He was given research time to broaden his talks and learn more about the information he was giving. When he became a GS-5 his work did not essentially change.

11. Upon becoming a GS-5 plaintiff was not advised as to what would be required of him to become a GS-7, although he was told that he was supposed to have an interpretive talk by him

- 4 -

audited yearly by his supervisor, and while a GS-4 he did receive such an audit.

12. At the end of his first year of employment as a GS-5, in October 1999, plaintiff was evaluated as "achieved." As of that time he understood that to be promoted he had to have received "achieved" on his yearly evaluation, have performed the duties that all other rangers performed as far as giving regular interpretive programs and living up to the standards of his position as they had been explained to him. To his knowledge he was eligible for promotion, but he was not promoted and remained a GS-5.

13. Thereafter, in October or November 1999, plaintiff approached Duane Erwin, who was then his supervisor, about being promoted and Mr. Erwin told plaintiff that he would look into it. Plaintiff subsequently asked again about his promotion and his supervisor said he had not gotten around to it. He approached his supervisor three or four more times without an answer and at about the fifth time he was told that promotion was not required by his EEO settlement agreement. At various times thereafter he was also told that he had taken off too much time from work (because of illness and treatment for cancer), that he had to do an educational program, and interpretive logs were also mentioned. In fact, prior to finally complaining to an EEO Counselor late in 2000, plaintiff was never given the same

- 5 -

answer by his supervisor as to the requirements for his promotion.

14. Finally on December 1, 2000, plaintiff filed an EEOC complaint alleging retaliatory discrimination for his prior EEO activity, after having consulted an EEO counselor in August 2000 because of his failure to be promoted, and also because of the agency's continuous classification of him as AWOL when he had been on approved leave for cancer treatment, and for offsets from his salary which he did not understand.

15. It was only after plaintiff had complained to the EEO counselor, and after he had remained a GS-5 for over two years, that plaintiff's supervisor, Mr. Erwin, finally gave plaintiff a memo specifying what would be considered necessary for plaintiff to be promoted; namely, to be audited giving a formal interpretive talk which was approved by his supervisor and to create eight written narratives of informal contacts with park visitors.

16. After plaintiff had received said memo in November 2000, plaintiff's supervisor, Duane Erwin, finally, for the first time, asked plaintiff about an appointment to audit an interpretive talk by plaintiff and plaintiff told him to do it any time he felt like it; however, plaintiff's supervisor did not perform such an audit of a talk by plaintiff until May 2002. Plaintiff had never turned down an opportunity for such an audit and this was the first time that Mr. Erwin had given plaintiff an opportunity to have a talk audited. The audit report shows that plaintiff's presentation was successful and, in fact, was described as "outstanding."

- 6 -

17.  Meanwhile as a GS-5 in 1998-99, 2000 and thereafter, plaintiff has given interpretive talks at all Mall sites and walking tours.  When required he did approximately three to five site checklists a week and has given both informal interpretive talks and formal timed talks numerous times.  He has served as lead ranger many times, often over GS-9's and his yearly job evaluations have always rated his job objectives as "achieved."  There are, to his knowledge, no other rangers on the Mall who are still GS-5's, nor, to his knowledge, does the agency now even hire rangers for permanent positions on the Mall at the GS-5 level.

18.  The agency claimed in response to plaintiff's EEO complaint that plaintiff had not completed requirements necessary for his promotion to GS-7; namely, an interpretive talk audited and approved by a supervisor and eight informal logs of contacts with visitors.  However, such claim is allegedly based on an agreement reached between the defendant's agency and the union in early 2000.  Such requirements were not in effect when plaintiff became eligible for promotion from GS-5 to GS-7 in October 1999, nor was such union agreement ever reduced to writing.

19.  Moreover, as alleged above, in spite of the many interpretive talks plaintiff had given in the course of his job, plaintiff was not given the opportunity to have a talk audited by his supervisor until May 2002, after he had been in grade GS-5

- 7 -

for over three years (sufficient time for him to have been promoted to a GS-9 grade).

20. Also, as previously alleged, plaintiff remains the only permanently employed ranger on the Mall who is a GS-5 rather than a GS-7 or GS-9; and he has received information indicating that since he became eligible for promotion from grade GS-5 in October 1999, at least 15 park rangers on the Mall have been promoted from grade GS-5 without being required to submit informal logs of contacts with visitors -- a requirement claimed by the agency to be have been necessary for plaintiff's promotion.

21. In fact, shortly after plaintiff completed his first year as a GS-5 in October 1999, the Regional Director of the National Capital Region advised, in a memorandum dated December 20, 1999, that to qualify for promotion from the GS-5 to 7 and 9 level, an employee ranger must meet the Office of Personnel Management standards for his job and have worked one year at the next lower level, but that while submission of a formal interpretive talk and logs of informal contacts were desirable, these were not requirements for promotion. Thus when plaintiff became eligible for promotion in 1999 the requirements for promotion relied upon by defendant's agency as preventing plaintiff's promotion were not considered mandatory for promotion by the Regional Director.

- 8 -

## Exhaustion of Remedies

22.  On August 20, 2000, plaintiff contacted an agency EEO counselor, and thereafter in December, 2000, he filed a formal complaint of discrimination against the agency, alleging that since resolution of his EEOC complaint regarding age discrimination in a previous case, Callahan v. Interior, EEOC No. 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X, he had been subjected to ongoing reprisals and retaliatory conduct by agency personnel; namely, ongoing discriminatory failure to promote him, ongoing and unfairly charging him with AWOL while he was being treated for cancer, and ongoing and wrongful offsets from his wages.  Plaintiff's claims were accepted for investigation and upon completion of the investigation plaintiff requested a hearing before an EEOC Administrative Judge.

23.  The agency moved for summary judgment in the administrative hearing action, which was denied, and a hearing was held on February 3, 2004.  Prior to the hearing the agency had corrected the AWOL on plaintiff's records to show Leave Without Pay, thus removing that issue from the case.  On March 4, 2004, the Administrative Judge issued a decision in which she found that the plaintiff had established a prima facie case of reprisal, but that the agency had articulated legitimate reasons for its actions, and she ruled against plaintiff.  Plaintiff appealed to the U.S. Equal Opportunity Commission regarding the issue of failure to promote, and on August 3, 2005 the Commission issued and mailed

to plaintiff a decision affirming the Administrative Judge's finding and advising that plaintiff had a right to file a civil action within 90 days of receipt of the EEOC's decision, with 5 days allowed for receipt after mailing (_i.e._, by November 6, 2005). (See attached EEOC letter.)

Plaintiff's Cause of Action for Reprisal

24. Plaintiff has been subjected to a continuing pattern of illegal retaliatory and discriminatory conduct by defendant's agency in reprisal for his EEO complaint against the agency under the Age Discrimination in Employment Act. Said course of conduct consists of, but is not limited to, the following: The agency has failed to promote plaintiff (who is in a career-ladder position he achieved through his EEO complaint) from grade GS-5, which he has occupied for over six years while receiving successful job appraisals each year; all other permanent ranger employees on the Mall have been promoted from grade GS-5 to grade GS-7 or 9 and plaintiff remains the only permanent employee ranger who is a GS-5; the agency no longer even hires permanent employees such as plaintiff below the GS-7 level. Plaintiff's supervisor, who was aware of plaintiff's prior EEO complaint, took more than a year to answer plaintiff's numerous inquiries about what was required for plaintiff to be promoted, and to inform plaintiff of the requirements which the agency now claims as mandatory for plaintiff's promotion; and although plaintiff's supervisor finally

- 10 -

advised plaintiff, in November 2000, that he must give a formal talk audited and approved by his supervisor in order to be promoted, plaintiff was not given an opportunity for such an audit until May 2002, even though plaintiff remained ready and invited such an audit at any time; further, although plaintiff was told that to be promoted he must submit logs of informal contacts with visitors, other rangers have been promoted without submitting such logs. In fact, the requirements for plaintiff's promotion now relied upon by the agency not only have not been observed consistently, but were not mandatory in October 1999 when plaintiff had satisfactorily fulfilled a year in grade as a GS-5 and tried unsuccessfully to find out from his supervisor what was necessary for his promotion, nor have the requirements for promotion claimed by the agency pursuant to a union agreement been reduced to writing. In addition, in engaging in such conduct toward the plaintiff, the agency was well aware that the plaintiff had become ill with cancer and was trying to work while undergoing medical treatment and discomfort which the agency's conduct made it even more difficult for plaintiff to undergo.

- 11 -

Count II

Facts

25. Paragraphs 5 through 9 of Count I of this complaint are hereby incorporated by reference.

26. On or about July 21, 2005, plaintiff was given by his supervisor a Form SF-35, Background Investigation Form and a Declaration of Federal Employment form, to be completed by plaintiff.

27. At no time did plaintiff ever refuse to fill out said forms, but because the forms included authorization and permission for obtaining investigatory information and broad discovery about him, plaintiff told his supervisor that he needed to consult with the attorney who was representing him in his pending EEO proceeding with the agency before filling out the forms, and that his attorney had just gone out of town and would return early in August. When plaintiff's attorney returned she advised him that it was all right to fill out the forms, and plaintiff had prepared to submit them when he received a memorandum dated August 18, 2005, from Robert J. Koratko, Chief, Division of Visitor Services, National Mall and Memorial Parks, proposing to remove plaintiff from federal service for insubordination in that plaintiff had failed to complete and submit the said forms.

28. The memorandum also proposed to suspend plaintiff for 35 days for a charge of "Failure to Follow Supervisory Directives" containing 7 specifications of alleged conduct, and to suspend him for 6 days for his alleged "Failure to Obtain Supervisory Approval

Prior to Leaving Assigned Post," containing 2 alleged specifications. All of the specifications, except those involving the personnel forms, were for incidents alleged to have taken place in January, February, March, and April, 2005, and plaintiff had never been reprimanded or counseled regarding any of the incidents alleged in the specifications, prior to plaintiff's receiving the memorandum of August 18,2005. Moreover, plaintiff has always received from his supervisor a job appraisal of "fully successful." including the appraisal he received dated October 12, 2005.

29. Defendant's agents clearly were aware of plaintiff's prior EEO activity, since he had requested time to consult with the attorney representing him in his EEO proceeding before filling out the forms in question, and Robert Karatko mentioned plaintiff's "on-going legal action against the National Park Service" in Specification #6 of Charge #1 of his August 18, 2005, memorandum.

30. In accordance with directions in said August 18, 2005 memorandum plaintiff submitted a timely response in writing to the Superintendent of the National Mall & Memorial Parks, contesting by his affidavit the truth and accuracy of the allegations in the memorandum.

31. Thereafter, on September 6, 2005, plaintiff made timely contact with an EEO Counselor, alleging that the proposal to suspend and terminate him from federal service was discriminatory and based on reprisal due to plaintiff's prior EEO activity.

32. On January 6, 2006, the EEO Counsellor issued to plaintiff a Notice of Final Interview and Right to File a Discrimination Complaint within 15 days under 29 C.F.R. Part 1614.

33. On January 23, 2006, plaintiff filed a complaint of discrimination alleging that he was discriminated against as follows: "I was discriminated against when I was notified by memorandum dated 8-18-05 from Robert J. Karatko, Division of Visitor Services, that I was being removed from my position in federal service. This action was based on charges stated in the memorandum which were not accurate or true and which did not warrant the action taken against me. Such unwarranted action against me was taken as part of a continuing pattern of reprisal for my EEO activity."

34. As remedies requested in the complaint, plaintiff asked that the disciplinary action proposed in the memorandum of 8-18-05 and the charges therein be retracted, and that all references to the matter be purged from his personnel file, and that he be provided with a letter from the Regional Director confirming the same.

35. The instructions to plaintiff accompanying the Complaint of Discrimination form, supplied by the agency, advise that "you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the final decision. Also you may file a civil action <u>after 180 calendar days</u> has elapsed from the filing date of your complaint, if the agency

has not issued a final decision and no appeal has been filed." (Emphasis supplied.)

35. By letter to plaintiff dated February 9, 2006, the EEO Program Manager, U.S. Department of the Interior, National Park Service, advised plaintiff that he would be informed within 60 days by certified letter of the determination concerning acceptance or dismissal of his EEO complaint. No such letter was ever received by plaintiff or his attorney until August 28, 2006, when a letter dated August 25, 2006, was received dismissing plaintiff's EEO complaint.

36. The memorandum of 8-18-05 proposing plaintiff's suspension and removal advised that "[a]s soon as possible after your answer is received, or after expiration of the 15 day limit, if you do not answer, you will be given a written decision on this proposed action." Nevertheless, although as alleged above, plaintiff submitted a written answer within the 15 day time limit, he did not receive any decision on the proposed action until June 22, 2006, after plaintiff had advised the Court and the agency that he was seeking to add his EEO complaint regarding the August 18, 2005, memorandum to this litigation, when a memorandum issued by Robert J. Karatko, Chief, Division of Visitor Services, National Mall & Memorial Parks, dated June 22, 2006, advised that the proposed notice of August 18, 2005, was rescinded, and that it was proposed that the plaintiff be suspended from federal service for 41 days.

37. The memorandum of June 22, 2006, eliminates the charge of insubordination and the first specification of Charge #1 in the 8-18-05 memorandum, but retains the other charges and specifications to support the proposed action.

38. The letter of defendant's EEO Program Manager to plaintiff of February 9, 2006, acknowledging the filing of his EEO complaint, advised plaintiff that he could amend his complaint "at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint" by sending a copy of the request for amendment to the Program Manager.  (See also 39 CFR 1614.106(d).)  Accordingly, by letter submitted on July 12, 2006, to the EEO Program Manager, plaintiff advised that he was amending his complaint to include the action against him proposed in the June 22, 2006, memorandum.

39. Neither by the date of plaintiff's letter of July 12, 2006, nor thereafter did plaintiff or his attorney receive a notice regarding a decision on plaintiff's original or revised complaint until by letter dated August 25, 2006 and received on August 28, 2006, plaintiff's attorney was finally notified by the defendant's Civil Rights Office that the plaintiff's EEO complaint was being dismissed because the agency "has not made a final determination" on plaintiff's proposed dismissal.  Said letter does not address the agency's memorandum of 6-22-06 rescinding plaintiff's dismissal, or plaintiff's 7-12-06 amendment to his EEO complaint.

Exhaustion of Remedies under Count II

40. In view of the above allegations, and the fact that more than 180 days passed since plaintiff filed his EEO complaint regarding the memorandum of August 18, 2005, without a decision regarding his complaint; and the fact that plaintiff has amended his EEO complaint to include his suspension proposed in the memorandum of June 22, 2006, on grounds that said proposal raises issues and claims like or related to those raised in his original EEO complaint, plaintiff has exhausted his administrative remedies as to Count II herein. Further, according to defendant's decision of August 25, 2006, dismissing plaintiff's EEO complaint, plaintiff is entitled to file an action in Court within 90 days of said decision.

Plaintiff's Cause of Action under Count II

41. Plaintiff has been subjected to a continuing pattern of illegal retaliatory and discriminatory conduct by defendant's agency in reprisal for plaintiff's past EEO actions and complaints against the agency; and in addition to the cause of action alleged under Count I, plaintiff alleges that said course of retaliatory conduct includes the proposal dated August 18, 2005, to suspend him and remove him from federal service on charges and specifications which were not accurate or supported by the evidence and which did not merit the actions proposed against him. Further defendant's memorandum of June 22, 2006, rescinding the proposal to remove plaintiff, proposes personnel action against the plaintiff involving a suspension and loss by plaintiff of more than

one month's salary and is subject to the same objections regarding illegal and retaliatory conduct as alleged above. In addition, the defendant's conduct in proposing serious personnel action against plaintiff, whether or not eventually rescinded, constitutes severe harassment of plaintiff, especially in view of the stress caused plaintiff by the defendant's unreasonable delay in deciding whether to implement the threatened actions against him, as well as the derogatory comments and accusations which the memoranda add to plaintiff's personnel file.

WHEREFORE, plaintiff prays that this Court
a. Enter judgment for plaintiff against defendant;
b. Declare that defendant violated plaintiff's rights under the Age Discrimination in Employment Act;
c. Enjoin defendant from further violating plaintiff's rights;
d. Order plaintiff's retroactive promotion with back pay and all benefits he should have received;
e. Order that all disciplinary action against plaintiff in the memoranda of August 18, 2005, and June 22, 2006, and the charges therein be retracted and that all references thereto be purged from plaintiff's personnel file:
f. Award plaintiff such other and further legal and equitable relief as this Court deems proper.

Respectfully submitted,

*A. Patricia Frohman*
A. PATRICIA FROHMAN, Bar #089516
Attorney for Plaintiff