UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GEORGE G. CALLAHAN           )
                            )
      Plaintiff,            )
                            )
         v.                 )  Civil Action No. 05-2170 RBW
                            )
DIRK KEMPTHORNE,[1] Secretary, )
  U.S. Department of         )
  the Interior,             )
                            )
      Defendant.            )
_____)

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO STRIKE

Pursuant to Fed. R. Civ. P. 56 and Local Civ. R. 7(h),

defendant Dirk Kempthorne, through his counsel, moves for summary

judgment as to Count I of the Amended Complaint, on the grounds

that there are no genuine issues as to any material fact in this

matter, and that the defendant is entitled to judgment as a

matter of law.[2]  Because, upon entry of judgment as to Count I,

_____

      [1]  Mr. Kempthorne has been substituted as the proper
defendant by operation of Fed. R. Civ. P. 25(d).

      [2]  To the extent that the Court may rely on matters outside
of the pleadings, the Court may enter summary judgment in favor
of the defendant.  See Fed. R. Civ. P. 12(b); 56.  Plaintiff
should take notice that any factual assertions contained in the
documents in support of this motion may be accepted by the Court
as true unless the plaintiff submits his own affidavit or other
documentary evidence contradicting the assertions in the
documents.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir.
1992), Local Rule 7(h); 56.1 and Fed. R. Civ. P. 56(e), which
provides as follows:

            Supporting and opposing affidavits shall be made
      on personal knowledge, shall set forth such facts as
      would be admissible in evidence, and shall show
      affirmatively that the affiant is competent to testify
      to the matters stated therein.  Sworn or certified

the allegations in that Count become immaterial, Defendant further moves to strike the allegations in Count I, pursuant to Fed. R. Civ. P. 12(f).  In support of this motion, the Court is respectfully referred to defendant's attached, supporting memorandum and statement of material facts.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

---

copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
GEORGE G. CALLAHAN              )
                               )
       Plaintiff,              )
                               )
          v.                   )  Civil Action No. 05-2170 RBW
                               )
DIRK KEMPTHORNE, Secretary,    )
  U.S. Department of           )
  the Interior,                )
                               )
       Defendant.              )
_____)
```

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGEMENT AND TO STRIKE

Defendant, Dirk Kempthorne, Secretary of the U.S. Department of the Interior, hereby respectfully submits this Memorandum of Points and Authorities in Support of Defendant's Motion for Partial Summary Judgment And To Strike.

I. INTRODUCTION

Plaintiff, George G. Callahan, is a Park Ranger, GS-5, assigned to the National Capital Region, National Park Service. (Amended Complaint, ¶ 3). Plaintiff brings this suit under the Age Discrimination and Employment Act, 29 U.S.C. § 621, et seq. and alleges that defendant retaliated against him for his prior EEO activity when he was 1) not promoted to the GS-7 level (Count I) and 2) proposed for removal (later reduced to a proposed suspension) for Failure To Follow Supervisory Directives and Failure to Obtain Supervisory Approval Prior to Leaving Assigned Post (Count II). See Amended Complaint, ¶¶ 1, 24, 26-28, 36 and

41.  As discussed more fully herein, summary judgment in favor of Defendant as to Count I is appropriate because the material facts are not in dispute.  Plaintiff cannot establish a *prima facie* case of retaliation because there was no causal connection between his prior EEO activity, which occurred in 1997-1998, and plaintiff's nonpromotion in October 1999.  Even if plaintiff can establish a *prima facie* case of retaliation discrimination, defendant has articulated legitimate, nondiscriminatory reasons for not promoting plaintiff.  Plaintiff was not promoted because he did not and has not completed all of the requirements for promotion to the GS-7 level, and plaintiff can not show that defendant's reasons were a pretext for unlawful discrimination.

Although only resolving one of the two Counts of the Amended Complaint, Defendant believes that resolution of this motion will materially advance the speedy and inexpensive resolution of this action, see Fed. R. Civ. P. 1, and will streamline discovery. Moreover, upon entry of judgment as to Count I, the Court should strike from the Complaint those allegations involving that Count, i.e. paragraphs 5-25.  See Fed. R. Civ. P. 12(f) (allowing immaterial or impertinent allegations to be stricken from a pleading).

## II.  PROCEDURAL HISTORY

On December 1, 2000, plaintiff filed a formal complaint of discrimination with the Department of the Interior alleging

reprisal discrimination when he was not promoted; his wages were offset; and he was charged with being absent without official leave ("AWOL").[1]  See Exhibit 1.  An administrative judge of the Equal Employment Opportunity Commission ("EEOC") held a hearing in this case on February 3, 2004. (Exhibit 2).  On March 4, 2004, the administrative judge issued a decision finding no discrimination, because the Agency had articulated legitimate, nondiscriminatory reasons for not promoting plaintiff.  The administrative judge correctly found that Plaintiff was not promoted because he did not complete the promotion requirements. (Exhibit 3).  Plaintiff appealed to the EEOC's Office of Federal Operations ("OFO"), and OFO sustained the administrative judge's decision.  It found that career ladder promotions were not automatic or mandatory after the passage of one year, as plaintiff had contended, and that it was undisputed that plaintiff never completed the requirements for promotion.  Thus, OFO concluded that the administrative judge's findings of facts were supported by substantial evidence. (Exhibit 3).  This conclusion remains correct.

---

[1]  The Agency changed all AWOL to leave without pay ("LWOP"), and Plaintiff removed this allegation before the administration hearing.  See Exhibit 2 at 8-9 (Tr. 8-9) (Exhibit 2 consists of excerpts from the transcript of the administrative hearing, which is hereafter referred to as "Tr.", followed by the relevant page number(s) from the transcript.)  The wage offsets are not an allegation in Plaintiff's current complaint, nor could they be.  See Taylor v. Small, 350 F.3d 1286, 1294 (D.C. Cir. 2003).

III.  STATEMENT OF FACTS

At all times relevant to this complaint, Plaintiff was employed by the National Park Service, National Capital Region, National Capital Parks-Central, Mall Operations (Agency), as a Park Ranger (Interpretation), GS-0025-5.  See Tr. 7; Exhibit 4 at 1; Exhibit 7.  Plaintiff obtained the Park Ranger position at the GS-4 level effective July 20, 1998, as a result of the 1998 settlement of an EEO complaint that plaintiff filed regarding his nonselection for the position of Park Ranger, GS-4. See Tr. 22, 27; Exhibit 5; Exhibit 6.  At the time of the settlement and nonselection, Park Ranger positions were one grade intervals, GS-4, GS-5 and GS-6.  Tr. 77-79.   Some time after the signing of the settlement agreement, Park Ranger positions were converted to two grade intervals, GS-5, 7, and 9.  Tr. 78.  In light of this conversion, the Agency voluntarily placed Plaintiff in the two-graded interval series effective October 20, 1998.  Tr. 27; Exhibit 7.

Duane Erwin, Supervisory Park Ranger, supervised Plaintiff in 1999 and 2000.  Tr. 140-41.  Suzanne Kelly, Acting Site Manager, served as plaintiff's second level supervisor from October 1999 through July 2000.  Tr. 183.  Lance Hatten, Site Manager, was plaintiff's second level supervisor from July 2000 through January 2003.  Tr. 199.

-4-

A.    Promotion Process Prior to Union Grievance in 1999/2000

In order for a park ranger to be promoted from the GS-5 to GS-7 level, he must complete an informal and formal interpretative program.  Tr. 87 and 162-64.   The informal interpretative program required all park rangers to complete eight written logs.  The eight written logs are written, usually typed, encounters with park visitors.  The logs are vignettes or interactions that a ranger has had with a visitor.  They are to demonstrate that a park ranger caused a visitor to have a better appreciation of the park through an emotional or an intellectual connection that the visitor has made to the site.  Tr. 164.  The eight informal interpretative logs are not synonymous with, and should not be confused with, park log books or site checklists. Park log books are located at each park site and are used for recording unusual activity at the park.  Tr. 94, 167.

The formal interpretative talk is a prepared, oral presentation given to a group of visitors.  Tr. 164.  The formal talk should also raise the visitor's level of appreciation that visitor has for the site.  Id.

Up until February 2000, the Agency used the competency requirement to determine whether rangers had successfully completed the informal and formal criteria and were therefore ready for promotion.  Tr. 82-85.  The competencies were a certification process whereby certifiers at the Agency's Harper's

-5-

Ferry site reviewed the informal logs and a video tape of the
formal talk.  Tr. 89-90.

B.   Bargaining Unit Employee Grievances

The competencies (or certification process) caused delay and
were determined not to be the best tool to use for promotion
process.  See Tr. 82-91.  Park Rangers began to complain because
Harper's Ferry was delaying the promotion process and often
losing tapes of formal talks.  Tr. 82.  The promotion process was
also delayed because the Agency did not have enough trained
certifiers.  Id.

Park Rangers are unionized and are represented by the
International Brotherhood of Painters and Allied Trades.  See
Exhibit 11c at 5; 11k at 1.  As a result of the delays in the
promotion process, several rangers began to file individual
grievances under the Union and the Agency's collective bargaining
agreement.  Tr. 81; Exhibits 11a-11k.  In addition to grieving
the delay, the park rangers also grieved the determination as to
what constituted time-in-grade as many of them had federal
service at the GS-5 level while assigned to other parks.  Tr. 95-
97.

The grievance of Park Ranger Adam Cochran illustrates the
concerns that the rangers had with the competencies or
certification process.  See Exhibit 11a.  Cochran had met the
informal and formal interpretative program requirements in order

-6-

to be promoted.  In his grievance, Cochran states he "completed his informal logs and had them certified by an evaluator," and that he had video taped his formal talk at the Lincoln Memorial. Exhibit 11a at 7.  Cochran, however, states that the competencies have resulted in a delay of his promotion.  Specifically, four months had passed before Harper's Ferry notified him and his supervisor that the tape of his formal presentation was lost. Cochran also noted that some the evaluator's comments were inconsistent and based on opinion.  One evaluator would say the talk was good, while another would say it had too many facts; and another evaluator would state that it did not have enough facts. In sum, Cochran believed that he was paying the price for problems within the competency program.  Id.

   C.   Resolution of the Grievances and the End of
        Competencies or Certification Process in 2000

   On or about February 7, 2000, the Superintendent of National Capital Parks Central, Consuella Joy, Administrative Officer, Christine Stanczak, Union Steward and Reginald Barkley, Union President met to discuss the grievances.  Tr. 91-92; Exhibit 12. It was determined at the meeting that competencies or certification by Harper's Ferry were no longer a requirement for promotion purposes.  Instead, immediate supervisors would determine whether rangers had met the requirements for promotion. Tr. 90.  This agreement resulted in immediate supervisors and not Harper's Ferry deciding whether the requirements for promotion

had been fulfilled.  Tr. 162.

The substantive requirements for promotion, however, remained the same.  In order for a Park Ranger to be promoted from the GS-5 to GS-7, he had to have time-in grade, complete eight informal logs, and a formal interpretative talk.  Tr. 92-93, 162; Exhibit 12.  In order for a ranger to be promoted from the GS-7 to the GS-9, a ranger had to complete an educational program.  He also had to perform lead ranger duties and complete one of the following: walking tour, an interpretative writing assignment, or a cultural resource program.  Tr. 93; Exhibit 12.

After the agreement was reached, Consuela Joy reviewed the grievances to determine whether the park rangers had met the requirements for promotion.  Tr. 95.  Only those rangers who met the requirements for promotion, as certified by their supervisors, were in fact promoted.  Tr. 100; Exhibits 11a-k.

Plaintiff's supervisor, Duane Erwin, recommended promotions from GS-5 to GS-7 with effective dates in 1998 and 1999 based upon whether the park rangers had met time-in-grade, completed the eight written logs and completed the formal interpretative talk.  Erwin recommended that Adam Cochran be promoted from the GS-5 to GS-7 level because he had completed his formal and informal interpretative talk.  Tr. 101; Exhibit 11a.  Erwin also recommended that Cochran be promoted from the GS-7 to GS-9 level because Cochran completed a "conducted activity" and an

educational program.  Exhibit 11a at 2, 5.

Erwin also recommended that Brian Hall be promoted from the GS-5 to GS-7 level effective July 27, 1999, because he met the formal and informal interpretative requirements.  Tr. 104; Exhibit 11d at 5.  Erwin also determined that Matt McNamer was capable of performing at the GS-7 level.  McNamer successfully completed formal and informal interpretative programs, and Erwin recommended his promotion be effective May 5, 1999.  Tr. 108; Exhibit 11g at 3.  Finally, Erwin recommended that Aaron Steketee be promoted to the GS-7 level effective September 13, 1999. Erwin audited Steketee's formal program, and found that it met the Agency's standards.  Steketee also achieved the national standard in presenting informal interpretation.  Tr. 112; Exhibit 11j at 4.  Everyone Erwin promoted from the GS-5 to GS-7 level met the requirements for promotion.  Tr. 167; Exhibits 11a, 11d, 11g, 11j.

D.   Complainant's Nonpromotion

Had he met the other requirements, Plaintiff would have been eligible for promotion to the GS-7 in October 1999, because that is when he had completed one year of time-in grade at the GS-5 level.  Plaintiff, however, was out of work for significant time periods in 1999-2001 due to illness.  Tr. 44; Exhibit 13. Plaintiff testified that he had to complete the requirements for promotion to the GS-7 level like the other Park Rangers.  When

-9-

asked under oath, Plaintiff testified:

>  Q: So you never stated that you had a promise from
>  the Agency or understanding with the Agency that you
>  would be promoted after one year to the 7 level?
>  A [by Plaintiff]: No, it was that I was the --
>  that I was in a career ladder position, that I was to
>  meet the requirements of everyone else who was in a
>  career ladder position.
>                        * * *
>  Q: Does it state anywhere in there that you would
>  have to do the -- the requirements for promotion?
>  A: Not that I see.
>  Q: Okay.  So it is your testimony that you need to
>  do the requirements in order to get promoted?
>  A: That I would have to live up to the standards,
>  sure.
>  Q: That all the other park rangers had to do to
>  get promoted from the 5 to 7, is that your testimony
>  today?
>  A: Yes.

Tr. 58-59.

More importantly, plaintiff admitted under oath that he had

not met the requirements for promotion to the GS-7 level.  Tr.

52.  Specifically, Plaintiff has not written his eight informal

logs.  Id.  Plaintiff still has not produced this independent,

written project.  Id.  Plaintiff also did not successfully

complete his formal talk in 1999, 2000, or 2001, when he went to

management seeking a promotion.  Tr. 38.  Plaintiff's formal talk

was not successfully completed until May 2002, and he produced it

as evidence in the EEOC administrative hearing.  Id.; Exhibit 8.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence

demonstrates "'that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a
matter of law.'" America's Community Bankers v. FDIC, 200 F.3d
822, 831 (D.C. Cir. 2000) (quoting Fed. R. Civ. P. 56(c)).  The
moving party is entitled to judgment as a matter of law where the
non-moving party has "failed to make a sufficient showing on an
essential element of...[his case] with respect to which...[he] he
has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317,
323 (1986).

     Once the moving party has met its burden, the nonmoving
party must set forth evidence of specific facts showing the
existence of a genuine issue for trial. Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).  A party opposing a
motion for summary judgment must do more than show that there is
some abstract doubt as to the material facts. Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  He
must submit documentary evidence to support his contention. Mere
allegations or denials of a pleading will not defeat a motion for
summary judgment. Celotex Corp., 477 U.S. at 322 n.3.

     "Not all alleged factual disputes represent genuine issues
of material fact which may only be resolved by a jury.  Material
facts are those that might affect the outcome of the suit under
governing law, and a genuine dispute about material facts exists
if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." America's Community Bankers,

200 F.3d at 831 (internal quotations omitted).  In essence, the non-moving party must show that there is a genuine issue for trial.  Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Barnette v. Chertoff, 453 F.3d 513, 516 (D.C. Cir. 2006) (affirming grant of summary judgment for employer where the plaintiff failed to rebut legitimate non-discriminatory reason for employment action).

### V.  ARGUMENT

   A.   PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF REPRISAL DISCRIMINATION BECAUSE THERE WAS NO CAUSAL CONNECTION BETWEEN PLAINTIFF'S EEO ACTIVITY IN 1997-1998 AND HIS NONPROMOTION IN 1999.

A plaintiff bears the burden of proving by a preponderance of the evidence that the defendant intentionally discriminated against him.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-54 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  A plaintiff must establish a *prima facie* case of discrimination by a preponderance of the evidence. Id.  Age discrimination complaints brought under the ADEA are resolved under the burden-shifting standard announced in McDonnell Douglas.

In order to establish a *prima facie* case of retaliation discrimination under the ADEA, the plaintiff must show that (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) the adverse action was causally related to the exercise of his rights.  Passer v.

-12-

Am. Chem. Soc'y, 935 F.2d 322, 331 (D.C. Cir. 1991); Mitchell v.
Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985) (quoting McKenna v.
Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984)); see also Carney
v. American University, 151 F.3d 1090, 1094 (D.C. Cir. 1998);
Thomas v. National Football League Players Ass'n, 131 F.3d 198,
202 (D.C. Cir. 1997).

     In order to establish a causal connection between the
protected activity and the adverse action, a plaintiff must show
a temporal relationship between the supervisor becoming aware of
the protected adverse employment action and the adverse
employment action. Clark County Sch. District v. Breeden, 532
U.S. 268, 273-74 (2001) (per curiam); see also Mitchell, 759 F.2d
at 86 (requiring that the adverse action take place shortly after
participation in the protected activity); Robinson v. Gonzales,
Civil Action No. 03-1101 TFH, 2006 WL 1102881 *6 (D.D.C. March
31, 2006) ("The eleven month gap is too great to permit temporal
proximity alone to establish causation."). District of Columbia
Courts have followed a three-month limit for establishing
proximity. See Oshiver v. Norton, Civil Action No. 00-2284 HHK,
2005 WL 3454336 (D.D.C. Dec. 16, 2005); Willingham v. Gonzales,
391 F. Supp. 2d 52, 61 (D.D.C. 2005); and Gustave-Schmidt v.
Chao, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004); see also Fox v.
Giaccia, 424 F.Supp.2d 1, 10 (D.D.C. 2006) ("the temporal
proximity between the purported statutorily protected activity

-13-

and the adverse action must be "very close'").

> [C]ourts generally have accepted . . . periods of a few
> days up to a few months and seldom have accepted time
> lapses outside of a year in length." Davis v. Ashcroft,
> 355 F.Supp.2d 330, 352 (D.D.C. 2005) (quoting Brodetski
> v. Duffey, 141 F.Supp.2d 35, 43 (D.D.C. 2001)); accord
> Ferguson v. Small, 225 F.Supp.2d at 38 (causal element
> established where termination occurred "a little more
> than a week" from employee's protected activity).

Greer v. O'Neill, Civil Action No. 01-1398 EGS, 2006 WL 751344,

*3 (D.D.C. March 22, 2006).

Although some courts have not dictated a specific maximum

time lapse between protected activity and an alleged adverse

action to establish causation, courts "seldom have accepted time

lapses of more than a year in length." Brodestski v. Duffey, 199

F.R.D. 14, 20 (D.D.C. 2001). See also Lockamy v. Truesdale, 182

F. Supp.2d 26, 37 (D.D.C. 2001) (lapse of three years between

protected activity and alleged retaliation too great to support

inference of retaliation); Ball v. Tanoue, 133 F. Supp.2d 84, 91

(D.D.C. 2001) (suggesting that a lapse of ten months is too great

to infer causation); Hastie v. Henderson, 121 F. Supp.2d 72, 80

(D.D.C. 2000) (passage of nearly two years prevents finding of a

causal connection) (citing numerous cases); Garrett v. Lujan, 799

F. Supp. 198, 202 (D.D.C. 1992) (full year too great for

retaliatory inference) (citing numerous cases); Burrus v. United

Tel. Co., 683 F.2d 339, 343 (10th Cir. 1982) (almost three years

too long to infer retaliation); Clark v. Chrysler Corp., 673 F.2d

921, 930 (7th Cir. 1982) (two years deemed too long).

-14-

It is undisputed that Plaintiff engaged in EEO activity in 1997 when he filed an EEO complaint through June 1998 when his EEO complaint was settled.  Plaintiff has not shown that the adverse action (i.e., nonpromotion) occurred within a time period that retaliation may be inferred.  Plaintiff's protected activity occurred more than one year prior to his nonpromotion in October 1999.  This passage of time inhibits plaintiff's ability to prove a necessary causal connection.

B.   EVEN IF PLAINTIFF CAN ESTABLISH A *PRIMA FACIE* CASE OF REPRISAL, DEFENDANT HAS ARTICULATED A LEGITIMATE, REASON FOR THE AGENCY'S ACTIONS, AND PLAINTIFF CANNOT SHOW THAT THE REASON WAS A PRETEXT.

Even if plaintiff can establish a *prima facie* case of retaliation discrimination, Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's non-promotion.  With respect to the promotion, the Agency, through the testimony of Duane Erwin, Suzanne Kelley, Lance Hatten, Consuella Joy and Plaintiff, has shown that promotion from the GS-5 level to the GS-7 level requires that a ranger complete a formal talk and eight informal logs and that plaintiff did not meet this requirement.  In fact, Plaintiff's own testimony is that he must meet the same requirements as other park rangers in order to be promoted, and that he had failed to complete eight informal logs when he claims he should have been promoted.  See Tr. at 38, 58-59.  Plaintiff did not and still has not completed the informal logs.  He has no one to blame for his failure to

-15-

meet this requirement.  The informal logs are an independent, written project that plaintiff must perform on his own.

## VI.  CONCLUSION

WHEREFORE, the above civil action should be dismissed, or summary judgment entered in favor of Defendant as to Count I and paragraphs 5 through 25 of the Amended Complaint should be stricken.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GEORGE G. CALLAHAN            )
                             )
        Plaintiff,           )
                             )
        v.                   )  Civil Action No. 05-2170 RBW
                             )
DIRK KEMPTHORNE, Secretary,  )
   U.S. Department of        )
   the Interior,             )
                             )
        Defendant.           )
_____)

STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE

Defendant hereby provides, pursuant to Local Civ. R. 7(h) and 56, the following statement of facts as to which there is no genuine dispute.

1.  At all times relevant to this complaint, Plaintiff was employed by the National Park Service, National Capital Region, National Capital Parks-Central, Mall Operations (Agency), as a Park Ranger (Interpretation), GS-0025-5. See Tr. 7; Exhibit 4 at 1; Exhibit 7.

2.  Plaintiff obtained the Park Ranger position at the GS-4 level effective July 20, 1998, as a result of a 1998 settlement of an EEO complaint that plaintiff filed regarding his nonselection for the position of Park Ranger, GS-4. See Tr. 22, 27; Exhibit 5; Exhibit 6.

3.  At the time of the settlement and nonselection, Park Ranger positions were one grade intervals, GS-4, GS-5 and GS-6. Tr. 77-79.

4. Some time after the signing of the settlement agreement, Park Ranger positions were converted to two grade intervals, GS-5, 7, and 9. Tr. 78.

5. In light of this conversion, the Agency voluntarily placed Plaintiff in the two-graded interval series effective October 20, 1998. Tr. 27; Exhibit 7.

6. Duane Erwin, Supervisory Park Ranger, supervised Plaintiff in 1999 and 2000. Tr. 140-41.

7. Suzanne Kelly, Acting Site Manager, served as plaintiff's second level supervisor from October 1999 through July 2000. Tr. 183.

8. Lance Hatten, Site Manager, was plaintiff's second level supervisor from July 2000 through January 2003. Tr. 199.

<u>Promotion Process Prior to Union Grievance in 1999/2000</u>

9. In order for a park ranger to be promoted from the GS-5 to GS-7 level, he must complete an informal and formal interpretative program. Tr. 87 and 162-64.

10. The informal interpretative program required all park rangers to complete eight written logs. <u>Id</u>.

11. The eight written logs are written, usually typed, encounters with park visitors. <u>Id</u>.

12. The logs are vignettes or interactions that a ranger has had with a visitor. <u>Id</u>.

13. The logs are to demonstrate that a park ranger caused a

-2-

visitor to have a better appreciation of the park through an emotional or an intellectual connection that the visitor has made to the site.  Tr. 164.

14.  The eight informal interpretative logs are not synonymous with, and should not be confused with, park log books or site checklists.  Id.

15.  Park log books are located at each park site and are used for recording unusual activity at the park.  Tr. 94, 167.

16.  The formal interpretative talk is a prepared, oral presentation given to a group of visitors.  Tr. 164.

17.  The formal talk should also raise the visitor's level of appreciation that visitor has for the site.  Id.

18.  Up until February 2000, the Agency used the competency requirement to determine whether rangers had successfully completed the informal and formal criteria and were therefore ready for promotion.  Tr. 82-85.

19.  The competencies were a certification process whereby certifiers at the Agency's Harper's Ferry site reviewed the informal logs and a video tape of the formal talk.  Tr. 89-90.

Bargaining Unit Employee Grievances

20.  The competencies (or certification process) caused delay and were determined not to be the best tool to use for promotion process.  See Tr. 82-91.

21.  Park Rangers began to complain because Harper's Ferry

-3-

was delaying the promotion process and often losing tapes of formal talks.  Tr. 82.

22.  The promotion process was also delayed because the Agency did not have enough trained certifiers.  <u>Id</u>.

23.  Park Rangers are unionized and are represented by the International Brotherhood of Painters and Allied Trades.  <u>See</u> Exhibit 11c at 5; 11k at 1.

24.  As a result of the delays in the promotion process, several rangers began to file individual grievances under the Union and the Agency's collective bargaining agreement.  Tr. 81; Exhibits 11a-11k.

25.  In addition to grieving the delay, the park rangers also grieved the determination as to what constituted time-in-grade as many of them had federal service at the GS-5 level while assigned to other parks.  Tr. 95-97.

26.  The grievance of Park Ranger Adam Cochran illustrates the concerns that the rangers had with the competencies or certification process.  <u>See</u> Exhibit 11a.

27.  Cochran had met the informal and formal interpretative program requirements in order to be promoted; and in his grievance, Cochran states he "completed his informal logs and had them certified by an evaluator," and that he had video taped his formal talk at the Lincoln Memorial. Exhibit 11a at 7.

28.  Cochran, however, states that the competencies have

-4-

resulted in a delay of his promotion; specifically, four months had passed before Harper's Ferry notified him and his supervisor that the tape of his formal presentation was lost.  Exhibit 11a.

29.  Cochran also noted that some the evaluator's comments were inconsistent and based on opinion.  Id.  One evaluator would say the talk was good, while another would say it had too many facts; and another evaluator would state that it did not have enough facts.  Id.

30.  In sum, Cochran believed that he was paying the price for problems within the competency program.  Id.

Resolution of the Grievances and the End of
Competencies or Certification Process in 2000

31.  On or about February 7, 2000, the Superintendent of National Capital Parks Central, Consuella Joy, Administrative Officer, Christine Stanczak, Union Steward and Reginald Barkley, Union President met to discuss the grievances.  Tr. 91-92; Exhibit 12.

32.  It was determined at the February 7, 2000 meeting that competencies or certification by Harper's Ferry were no longer a requirement for promotion purposes.  Id.

33.  Instead, immediate supervisors would determine whether rangers had met the requirements for promotion.  Tr. 90.

34.  This agreement resulted in immediate supervisors and

-5-

not Harper's Ferry deciding whether the requirements for promotion had been fulfilled.  Tr. 162.

35.  The substantive requirements for promotion, however, remained the same; in order for a Park Ranger to be promoted from the GS-5 to GS-7, he had to have time-in grade, complete eight informal logs, and a formal interpretative talk.  Tr. 92-93, 162; Exhibit 12.

36.  In order for a ranger to be promoted from the GS-7 to the GS-9, a ranger had to complete an educational program.  He also had to perform lead ranger duties and complete one of the following: walking tour, an interpretative writing assignment, or a cultural resource program.  Tr. 93; Exhibit 12.

37.  After the agreement was reached, Consuela Joy reviewed the grievances to determine whether the park rangers had met the requirements for promotion.  Tr. 95.

38.  Only those rangers who met the requirements for promotion, as certified by their supervisors, were in fact promoted.  Tr. 100; Exhibits 11a-k.

39.  Plaintiff's supervisor, Duane Erwin, recommended promotions from GS-5 to GS-7 with effective dates in 1998 and 1999 based upon whether the park rangers had met time in grade, completed the eight written logs and completed the formal interpretative talk, recommending that Adam Cochran be promoted from the GS-5 to GS-7 level because he had completed his formal

and informal interpretative talk.  Tr. 101; Exhibit 11a.

40.  Erwin also recommended that Cochran be promoted from the GS-7 to GS-9 level because Cochran completed a conducted activity and an educational program.  Exhibit 11a at 5.

41.  Erwin also recommended that Brian Hall be promoted from the GS-5 to GS-7 effective July 27, 1999, because he met the formal and informal interpretative requirements.  Tr. 104; Exhibit 11d at 5.

42.  Erwin also determined that Matt McNamer was capable of performing at the GS-7 level.  McNamer successfully completed formal and informal interpretative programs, and Erwin recommended his promotion be effective May 5, 1999.  Tr. 108; Exhibit 11g at 3.

43.  Erwin recommended that Aaron Steketee be promoted to the GS-7 level effective September 13, 1999, after Erwin audited Steketee's formal program and found that it met the Agency's standards.  Tr. 112; Exhibit 11j at 4.

44.  Steketee also achieved the national standard in presenting informal interpretation.  Id.

45.  Everyone Erwin promoted from the GS-5 to GS-7 level met the requirements for promotion.  Tr. 167; Exhibits 11a, 11d, 11g, 11j.

Complainant's Nonpromotion

46.  Had he met the other requirements, Plaintiff would have

-7-

been eligible for promotion to the GS-7 in October 1999, because
this is when he had completed one year of time-in grade at the
GS-5 level.  See Tr. 22, 27; Exhibit 5; Exhibit 6.

47.  Plaintiff, however, was out of work for significant
time periods in 1999-2001 due to illness.  Tr. 44; Exhibit 13.

48.  Plaintiff testified that he had to complete the
requirements for promotion to the GS-7 level like the other Park
Rangers, testifying, in part, as follows:

> Q: So you never stated that you had a promise from
> the Agency or understanding with the Agency that you
> would be promoted after one year to the 7 level?
> A [by Plaintiff]: No, it was that I was the --
> that I was in a career ladder position, that I was to
> meet the requirements of everyone else who was in a
> career ladder position.
> * * *
> Q: Does it state anywhere in there that you would
> have to do the -- the requirements for promotion?
> A: Not that I see.
> Q: Okay.  So it is your testimony that you need to
> do the requirements in order to get promoted?
> A: That I would have to live up to the standards,
> sure.
> Q: That all the other park rangers had to do to
> get promoted from the 5 to 7, is that your testimony
> today?
> A: Yes.

Tr. 58-59.

49.  Plaintiff admitted under oath that he had not met the
requirements for promotion to the GS-7 level.  Tr. 52; see also
163-66.

50.  Specifically, Plaintiff has not written his eight
informal logs.  Id.

51.   Plaintiff still has not produced this independent, written project.  Id.

52.   Plaintiff also did not successfully complete his formal talk in 1999, 2000, or 2001, when he went to management seeking a promotion.  Tr. 38, 162-66.

53.   Plaintiff's formal talk was not successfully completed until May 2002, and he produced it as evidence in the EEOC administrative hearing.  Id.; Exhibit 8.

54.   Plaintiff was informed about the requirements for promotion in 1998 and 1999, initiated in 1995, as they were noted in Plaintiff's performance plans and evaluations.  Exhibits 9 and 10; see also Tr. 160-61.

55.   In 2000, Erwin orally and in writing reiterated the requirements for promotion from the GS-5 to GS-7.  Tr. 157-58; Exhibit 14.

56.   Plaintiff was out of work for significant periods of time after 1999, hindering Erwin's ability to audit Plaintiff's formal talk.  Tr. 44, 63, 160-61, 171; Exhibit 13.

57.   For example, Erwin had planned to meet with plaintiff on December 14, 2000, to discuss his progress on the informal and formal interpretative requirements, but Erwin was not able to meet with Plaintiff on that day because Plaintiff was not at work, and he did not work that entire pay period.  See Tr. 159; Exhibit 14.

58.   In fact Erwin was not able to meet with Complainant the rest of December 2000, January 2001, February 2001, March 2001 and April 2001, because plaintiff was not at work.  Tr. 60-63 159-60; Exhibit 13.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing Defendant's Motion for Partial Summary Judgment And To Strike, statement of material facts and a proposed order has been made through the Court's electronic transmission facilities on this 27th day of October, 2006.

_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC  20530
(202) 514-7230