## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GEORGE G. CALLAHAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-2170 RBW** |
| ) | |
| **DIRK KEMPTHORNE, Secretary, U.S.** ) | |
| **Department of the Interior,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL
## SUMMARY JUDGMENT AND TO STRIKE

Pursuant to Fed. R. Civ. P. 56(c) and LCvR 7(h), Plaintiff, George G. Callahan, by his

counsel, hereby opposes Defendant's Motion for Partial Summary Judgment and to Strike.

Plaintiff asserts that genuine issues of material fact prevent summary judgment and that

Defendant is not entitled to summary judgment as a matter of law. Plaintiff further contends that

if the Court grants Defendant's Motion, striking any portion of the Amended Complaint is not

justified. Plaintiff has attached a memorandum of points and authorities and statement of

genuine issues of material fact in support of this Opposition.

Respectfully submitted,

GREENBERG TRAURIG, LLP


*Steven M. Schneebaum/dmm*

Steven M. Schneebaum, DC Bar No. 956250
Debra McGuire Mercer, DC Bar No. 439233
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, D.C.  20006
(202) 331-3100
(202) 331-3101

Attorneys for Plaintiff George G. Callahan

January 17, 2007

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GEORGE G. CALLAHAN,      )
                          )
         Plaintiff,          )
                          )
         v.                 )     **Civil Action No. 05-2170 RBW**
                          )
DIRK KEMPTHORNE, Secretary, U.S. )
Department of the Interior,       )
                          )
         Defendant.       )
                          )

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT AND TO STRIKE**

Plaintiff George G. Callahan hereby submits this Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment and to Strike.

### PROCEDURAL BACKGROUND

On December 1, 2000, Mr. Callahan filed a formal complaint of discrimination against the National Park Service, Department of the Interior ("Agency"), alleging discrimination based on reprisal. The Agency completed a Report of Investigation and accepted two issues for processing: whether Mr. Callahan was discriminated against (1) when he was denied promotions on October 19, 1999 and October 20, 2000 and (2) when he was placed on absence without leave status, which lead to garnishment of his wages. The Agency later changed Mr. Callahan's status from absent without leave to leave without pay, and Mr. Callahan did not pursue that issue before the administrative hearing. After a hearing, on March 4, 2004, the Equal Employment

Opportunity Commission ("EEOC") administrative judge issued a decision in favor of the Agency. Plaintiff appealed that decision to the EEOC's Office of Federal Operations, and that Office sustained the administrative judge's decision.

On November 4, 2005, Plaintiff filed a Complaint against the United States Department of the Interior alleging violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, et seq. Mr. Callahan filed an Amended Complaint on September 16, 2006. In particular, Mr. Callahan alleged that Defendant discriminated against him on the basis of retaliation and reprisal for his prior Equal Employment Opportunity ("EEO") activity by failing to promote him from grade GS-5 to Grade GS-7 (Count I) and by issuing memoranda proposing Mr. Callahan's removal and suspension from federal service (Count II).

Defendant requests the Court to grant summary judgment in its favor on Count I, claiming that there are no material facts in dispute. Plaintiff asserts that there are material facts in dispute that preclude this Court from granting summary judgment.

## STATEMENT OF FACTS

Mr. Callahan began working for the National Park Service, National Capital Region, as a volunteer in 1991. In this capacity, he worked on the National Mall for approximately 20 hours each week from 1991 until 1994 when he was hired as a seasonal park ranger for the period of April through August 1994. After his term as a seasonal park ranger he continued to work as a volunteer. (Exhibit 1, Tr. at 15-20)

After working as a seasonal park ranger in 1994, Mr. Callahan applied for a permanent position as a ranger on the National Mall, but was not among those applicants who were hired, all of whom were much younger than he. For this reason he filed an EEO complaint on the basis of age discrimination which resulted in a settlement in June 1998. (Exhibit 2) Under the

settlement agreement, Mr. Callahan was hired as an interpretive park ranger, GS-4, step 4, on the National Mall, with the understanding that he would be promoted to grade GS-5 within 90 days and would be placed on a career ladder position in which he could move from a GS-5 to a GS-7 and GS-9 with a requirement of at least one year in grade for promotion. (Exhibit 1, Tr., at 24-25)  In accordance with the settlement agreement, Mr. Callahan was appointed as a GS-4, step 4 on July 20, 1998 (Exhibit 3-A), and 90 days thereafter, on October 20, 1998, he was promoted to GS-5, step 4.  (Exhibit 3-B)  At the time of his promotion to GS-5, Mr. Callahan received an evaluation of "achieved." (Exhibit 4-B)

As a GS-4, Mr. Callahan covered all sites on the National Mall and gave interpretive talks.  When Mr. Callahan was promoted to a GS-5, his work responsibilities remained essentially the same. (Exhibit 1, Tr. at 28)  Upon being promoted to a GS-5, and during his first year in that grade, he was told that giving a formal audited talk and compiling logs were desirable goals, but no one said they were necessary achievements for him to be promoted from a GS-5 to a GS-7.  (Exhibit 1, Tr. at 28, 30, 73)  Duane Erwin, Mr. Callahan's supervisor, became aware of Mr. Callahan's prior EEO activity sometime in 1999 when Mr. Callahan informed him of it in conjunction with establishing a performance plan.  (Exhibit 1, Tr. at 156-57)  At the end of his first year as a GS-5 in October 1999, Mr. Callahan was evaluated by Mr. Erwin, as having "achieved" his work plan, but nothing was said to him about promotion to GS-7.  (Exhibit 1, Tr. at 30-31; Exhibit 4-A)

Thereafter, starting in October and November 1999, Mr. Callahan approached Mr. Erwin several times about his promotion to GS-7, and was told by Mr. Erwin that he would "look into it."  Mr. Erwin subsequently advised Mr. Callahan that he had not looked into Mr. Callahan's promotion to GS-7.  (Exhibit 1, Tr. at 31)  Furthermore, each time Mr. Callahan inquired with

3

Mr. Erwin about the requirements for promotion, he was given a different answer. (Exhibit 1, Tr. at 32) For example, Mr. Erwin first told Mr. Callahan that his promotion depended on the provisions of Mr. Callahan's EEO settlement agreement. (Exhibit 1, Tr. at 32)

In February 2000, the park rangers' union steward issued a memorandum dated February 7, 2000, after the union and the agency resolved numerous grievances regarding promotion, concerning the requirements for promotion of rangers on the National Mall. (Exhibit 6) The memorandum stated that the minimum standard for promotion from GS-5 as: "Informal presentation, formal presentation, completing the site checklists". Id. The February 7, 2000 memorandum does not provide that the "informal presentation" meant eight written logs. Id.

The requirements for promotion to GS-7 were not made clear to Mr. Callahan until November 2000. (Callahan Declaration, ¶ 5) Mr. Callahan did not recall being present at any meetings during which the requirements for promotion to GS-7 were discussed. (Callahan Declaration, ¶ 5) While Mr. Erwin did discuss the audited formal interpretive talk and eight written narratives, or logs, with Mr. Callahan as desirable goals, he did not tell Mr. Callahan that they were requirements for promotion to GS-7. (Exhibit 1, Tr. at 73, 173-81; Callahan Declaration, ¶ 5) Mr. Callahan's performance evaluations noted that a "goal" was to "Start collecting interpretive contacts for the Informal Interpretation Log". (Exhibit 4-A ) As noted in a memorandum dated December 20, 1999, two months after Mr. Callahan first became eligible for promotion, from the Regional Director of the National Capital Region, the completion of an approved formal and informal interpretive program "while highly desirable" was "not a requirement for promotion." (Exhibit 5; Exhibit 1, Tr. at 178)

The February 7, 2000 memorandum also stated that Connie Joy, the Administrative Officer, would meet with each of the park rangers' supervisors to decide whether they feel their employee has reached the stated objectives. (Exhibit 6)  Mr. Callahan did not receive the attention and assistance given to other employees in obtaining their promotions. (Exhibit 7-A - 7-K; Callahan Declaration, ¶ 6)  In 2000, several GS-5 rangers were recommended for promotion to GS-7 by their supervisor and received the requested promotion. (Exhibit 7-A - 7-K) Loren Goering recommended Rachel Gomez for promotion in a memorandum dated March 8, 2000. (Exhibit 7-C) The recommendation memorandum referred to tapes of Ms. Gomez conducting formal and informal interpretation.  There is no reference to Ms. Gomez submitting written logs. Id. Mr. Erwin recommended Brain Hall for promotion in a memorandum dated March 13, 2000. (Exhibit 7-D) The recommendation memorandum noted that Mr. Hall has "demonstrated an ability to perform informal interpretation." There is no reference to Mr. Hall submitting written logs. Id. Mr. Erwin recommended Matt McNamer for promotion in a memorandum dated March 13, 2000. (Exhibit 7-G) The recommendation memorandum noted that Mr. McNamer has "demonstrated that he could perform effective informal interpretation." There is no reference to Mr. McNamer submitting written logs. Id.

Ms. Kelley recommended Jerold Hawn for promotion in a memorandum dated March 2, 2000.  (Exhibit 7-E)  The recommendation memorandum noted that Mr. Hawn has "demonstrated that he can perform informal interpretation." There is no reference to Mr. Hawn submitting written logs. Id. Ms. Kelley also recommended Peter Lonsway for promotion in a memorandum dated January 12, 2000. (Exhibit 7-F) The recommendation memorandum noted that Mr. Lonsway has "demonstrated competency in Informal Interpretation." There is no reference to Mr. Lonsway submitting written logs. Id.

During the summer of 2000, Mr. Callahan's supervisor, then Ms. Suzanne Marie Kelley, never spoke to him about the logs. (Exhibit 1, Tr. at 69) Connie Joy, the Administrative Officer, admitted that there was no document stating that the need to make a formal presentation and make eight logs. Ms. Joy assumed that any reference to logs was a result of management interpreting how to measure whether a ranger did informal presentations. (Exhibit 1, Tr. at 118-19, 125-26) Mr. Lance Kirby Hatten, site manager for National Mall operations in July 2000 testified that the log of informal contacts, formal audited interpretive program did not become a requirement for promotion until shortly before July 2000. (Exhibit 1, Tr. at 201-02)

Finally, in November 2000, after Mr. Callahan had been a GS-5 for over two years and had received a rating of "achieved" on his performance evaluation, Mr. Erwin told Mr. Callahan what he said were the specific requirements for promotion to GS-7. (Exhibits 4-A, 4-B, 8) At that time, Mr. Erwin provided Mr. Callahan with a memorandum dated November 19, 2000, detailing the standard for promotion. (Exhibit 8) The requirements for promotion to GS-7, as stated in November 2000, included creating eight written narratives of informal contacts with park visitors and being audited by a supervisor while giving a successful formal interpretive talk. Id. Mr. Erwin asked Mr. Callahan about a time to audit a formal interpretive talk and Mr. Callahan told Mr. Erwin that any time was fine. (Exhibit 1, Tr. at 37, 172) Mr. Callahan never told Mr. Erwin that he did not want the audit to occur at a particular time. (Exhibit 1, Tr. at 38, 42) Although Mr. Callahan was on extended leave for parts of 1999 and 2000 due to illness, he returned to work in early summer 2000. (Exhibit 1, Tr. at 44-45) Furthermore, as a GS-5 in 1999 and 2000 Mr. Callahan had been giving numerous formal and informal interpretive talks and has served as lead ranger, often over other rangers in grade GS-9, 52 times. (Exhibit 1, Tr. at 44) However, Mr. Erwin did not perform such an audit until May 2002. The audit report shows

that Mr. Callahan's formal interpretive talk was successful and described the talk as "outstanding". (Exhibit 9)  Although Mr. Callahan contends that there was no requirement that he submit written logs at the time that he was denied a promotion to GS-7 in 1999, he has completed eight informal logs and has provided them to his counsel.  (Callahan Declaration, ¶ 7)

## ARGUMENT

Summary judgment is appropriate when the pleadings and evidence indicate that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).    The court "must view the record in the light most favorable to the nonmoving party, according that party the benefit of all reasonable inferences." Forman v. Small, 271 F.3d 285, 291 (D.C. Cir. 2001).  If the movant carries the initial burden, then the burden shifts to the non-moving party to establish that there is a genuine issue of material fact for trial.  Celotex Corp., 477 U.S. at 324.  The court's function is "to determine whether there is a genuine issue for trial on an independent review of the evidence presented." Robinson v. Gonzales, Civil No. 01-1101, 2006 WL 1102881, at *4 (D.D.C. Mar. 31, 2006) (citations omitted).

## I.    Plaintiff Has Established A Prima Facie Case of Retaliation Discrimination.

In retaliation cases in which there is no direct evidence of  retaliation, courts apply the standard in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).  Under McDonnell Douglas, a plaintiff has the initial burden to establish a *prima facie* case of discrimination by a preponderance of the evidence. 411 U.S. at 802, 93 S.Ct. at 1817.  To establish a *prima facie* case of retaliation under the ADEA a plaintiff must show:  (1) he engaged in a protected activity; (2) he was subsequently was subjected to an adverse action by his

employer; and (3) a causal connection exists between the two events.  <u>See</u> <u>Mitchell v. Baldridge</u>, 759 F.2d 80, 86 (D.C. Cir. 1985).  Defendant only argues that Plaintiff fails to meet the third prong of this test.

The causal connection in a claim for retaliation "<u>may</u> be established by showing that the employer had knowledge of the employee's activity, and that the adverse personnel action took place shortly after that activity."  <u>Mitchell</u>, 759 F.2d at 86 (emphasis added).  "To qualify as a causal connection the temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be 'very close.'"  <u>Hammond v. Chao</u>, 383 F.Supp.2d 47, 59 (D.D.C. 2005) (quotation omitted).  However, "[t]here is no hard and fast rule that adverse employment actions must fall within a specified time frame for a retaliation claim to be actionable."  <u>Gipson v. Wells Fargo, N.A.</u>, Civil Action Nos. 002865, 05-1184, 2006 WL 3040647, at *5 (D.D.C. Oct. 24, 2006) (citing <u>Holcomb v. Powell</u>, 433 F.3d 889, 903 (D.C. Cir. 2006)).  Furthermore, "[a]t the *prima facie* stage of a retaliation claim a plaintiff's burden is not great; [he] merely needs to establish facts adequate to permit an inference of retaliatory motive." <u>McKenna v. Weinberger</u>, 729 F.2d 783, 790 (D.C. Cir. 1984).

A plaintiff may provide evidence other than temporal proximity to show possible retaliation.  <u>Gipson</u>, at *5; <u>see also</u> <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 280 (3rd Cir. 2000) (proffered evidence, looked at as a whole, can raise an inference of causation).  For example, a plaintiff may rely on evidence that he received disparate treatment compared to other similarly situated employees or that the employer failed to follow standard procedures.  <u>See</u> <u>id.</u> at *9.  "The disparate treatment of a similarly situated employee may suggest discrimination or retaliation to support a jury finding for the plaintiff."  <u>Gipson</u>, at *10.  "When disparate treatment is at issue, courts in this circuit have been cautious in granting summary judgment since

8

questions of disparate treatment are difficult questions of fact often left to a jury." Id. (citing Mitchell v. DCX, Inc., 274 F.Supp.2d 33, 39 (D.D.C. 2003)).

Defendant solely relies on the temporal relationship between the date Mr. Callahan's EEO complaint was settled (June 1998) and the date of the adverse action (October 1999) as the basis for showing that Plaintiff has not established a prima facie case for retaliation. However, Defendant ignores the fact that Mr. Erwin did not become aware of Mr. Callahan's EEO activity until sometime in 1999. (Exhibit 1, Tr. at 156-57). Therefore, Mr. Callahan's non-promotion occurred within the same year that his supervisor gained knowledge of his EEO activity.

Plaintiff proffers further evidence to show a causal link between his EEO activity and non-promotion. In particular, evidence supports the conclusion that the Agency promoted similarly situated GS-5 park rangers to GS-7 without requiring the submission of informal logs during the same period that Mr. Callahan was eligible for promotion. See Plaintiff's Statement of Genuine Issues of Material Fact ("Plaintiff's Statement"), ¶¶ 5, 6. The Agency's disparate treatment of Mr. Callahan suggests retaliation. Plaintiff's allegation of disparate treatment raises a genuine issue of material fact that prevents summary judgment on whether Plaintiff has established a *prima facie* case of retaliation.

## II.    Defendant Has Not Shown A Legitimate Non-Discriminatory Reason For Its Actions.

"If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions." Hammond, 383 F. Supp.2d at 53 (citing McDonnell Douglas, U.S. at 602, 93 S.Ct. 1817)). If the employer meets its burden, then the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for retaliation. Id. at 53-54 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097 (2000)). Defendant contends that the testimony of Agency witnesses

shows that promotion from GS-5 to GS-7 required completion of a formal talk and eight informal logs. There is a genuine dispute concerning whether the informal logs were a requirement for promotion. See Plaintiff's Statement, ¶¶ 1-4. Defendant further misconstrues Mr. Callahan's testimony about needing to meet the same requirements as other park rangers for promotion. See id. ¶ 10. Mr. Callahan did not understand that the requirements for promotion included informal logs. Indeed, there is no documented evidence that at least five employees (Ms. Gomez, Mr. Hall, Mr. Hawn, Mr. Lonsway, and Mr. McNamer) completed the logs prior to being promoted to GS-7. Disputed facts concerning the standards for promotion and the consistent application of those standards to all employees prevents summary judgment on Count I.

**III.    The Motion to Strike Should Be Denied.**

Defendant requests the Court to strike paragraphs 5 through 25 of the Complaint if the Court grants summary judgment in favor of Defendant on Count I. Defendant's motion to strike is inappropriate. Paragraphs 5 through 25 of the Complaint contain factual background that provides important context for both counts in the Complaint. In particular, paragraphs 5 though 24 set forth Mr. Callahan's employment history with the Agency, his previous EEO complaint, and the Agency's actions after Mr. Callahan filed the EEO complaint. Count II of the Complaint cites a "continuing pattern of illegal retaliatory and discriminatory conduct by defendant's agency in reprisal for plaintiff's past EEO activities and complaints against the agency." Amended Complaint, ¶ 41. Therefore, all facts alleged in the Complaint concerning Mr. Callahan's prior EEO activity and the Agency's conduct toward Mr. Callahan are material to the Amended Complaint and should not be stricken.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests this Court to deny Defendant's Motion for Partial Summary Judgment as to Count I and to deny Defendant's Motion to Strike paragraphs 5 through 25 of the Amended Complaint.

Respectfully submitted,

GREENBERG TRAURIG, LLP

Steven M. Schneebaum, DC Bar No. 956250
Debra McGuire Mercer, DC Bar No. 439233
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, D.C. 20006
(202) 331-3100
(202) 331-3101

Attorneys for Plaintiff George G. Callahan

January 17, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GEORGE G. CALLAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-2170 RBW |
| | ) | |
| DIRK KEMPTHORNE, Secretary, U.S. | ) | |
| Department of the Interior, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S STATEMENT OF GENUINE ISSUES OF MATERIAL FACT

Plaintiff George G. Callahan hereby submits this Statement of Genuine Issues of Material Fact ("Plaintiff's Statement") in Support of Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment and to Strike. Plaintiff contends that several of the statements contained in Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute (Defendant's Statement") present genuine issues of material fact or are not supported by the evidence cited.

This case concerns Mr. Callahan's allegation that Defendant discriminated against him on the basis of retaliation and reprisal for his prior Equal Employment Opportunity ("EEO") activity by failing to promote him from grade GS-5 to Grade GS-7 (Count I) and by issuing memoranda proposing Mr. Callahan's removal and suspension from federal service (Count II). Defendant requests the Court to grant summary judgment in its favor on Count I, claiming that there are no material facts in dispute. Defendant's Statement asserts that the preparation of eight written logs of informal contacts was a requirement for promotion from GS-5 to GS-7 that was applied to all

persons seeking promotion during Mr. Callahan's employment with Defendant. Defendant further maintains that Mr. Callahan did not submit logs and as such, was denied a promotion to GS-7. As explained in detail in this Statement, there is a genuine dispute about whether the written logs were a requirement for promotion to GS-7 and about whether Defendant actually applied such a requirement to all employees seeking a GS-7 level.

Plaintiff's Statement addresses the following statements contained in Defendant's Statement about which there is a genuine dispute:

1.    The question of whether the informal interpretive program required written logs is in dispute. In paragraphs 9 and 10 of Defendant's Statements, Defendant contends that the "informal interpretive program" required park rangers to complete eight written logs to be promoted from the GS-5 to the GS-7 level in October 1999. Plaintiff contends that there is no evidence indicating that the informal interpretive program required written logs. Plaintiff further states that until November 2000, Mr. Callahan was not aware that written logs were a requirement for promotion to GS-7. Plaintiff proffers the following evidence to support its position that the informal interpretive program did not require written logs as a condition for promotion to GS-7 when Mr. Callahan was denied a promotion.

The requirements for promotion to GS-7 were not made clear to Mr. Callahan until November 2000. (Callahan Declaration, ¶ 5) Mr. Callahan did not recall being present at any meetings during which the requirements for promotion to GS-7 were discussed. (Callahan Declaration, ¶ 5) While Mr. Erwin did discuss the audited formal interpretive talk and eight written narratives, or logs, with Mr. Callahan as desirable goals, he did not tell Mr. Callahan that they were requirements for promotion to GS-7. (Exhibit 1, Tr. at 73, 173-181; Callahan Declaration, ¶ 5) Mr. Callahan's performance evaluations noted that a "goal" was to "Start

collecting interpretive contacts for the Informal Interpretation Log". (Exhibit 4-A)  As noted in a memorandum dated December 20, 1999, two months after Mr. Callahan's non-promotion, from the Regional Director of the National Capital Region, the completion of an approved formal and informal interpretive program "while highly desirable" was "not a requirement for promotion." (Exhibit 5; Exhibit 1, Tr. at 178)

In February 2000, the park rangers' union steward issued a memorandum dated February 7, 2000, after the union and the agency resolved numerous grievances regarding promotion, concerning the requirements for promotion of rangers on the National Mall.  (Exhibit 6)  The memorandum stated that the minimum standard for promotion from GS-5 as:  "Informal presentation, formal presentation, completing the site checklists".  Id.  The February 7, 2000 memorandum does not provide that the "informal presentation" meant eight written logs.  Id.

During the summer of 2000, Mr. Callahan's supervisor, then Ms. Suzanne Marie Kelley, never spoke to him about the logs.  (Exhibit 1, Tr. at 69)  Connie Joy, the Administrative Officer, admitted that there was no document stating that the need to make a formal presentation and make eight logs.  Ms. Joy assumed that any reference to logs was a result of management interpreting how to measure whether a ranger did informal presentations.  (Exhibit 1, Tr. at 118-19, 125-26)  Mr. Lance Kirby Hatten, site manager for National Mall operations in July 2000 testified that the log of informal contacts, formal audited interpretive program did not become a requirement for promotion until shortly before July 2000.  (Exhibit 1, Tr. at 201-02)

Finally, in November 2000, after Mr. Callahan had been a GS-5 for over two years and had received a rating of "achieved" on his performance evaluation, Mr. Erwin told Mr. Callahan what he said were the specific requirements for promotion to GS-7.  (Exhibits 4-A, 4-B, 8)  Prior to November 2000, the requirements for promotion to GS-7, as stated in the November 19, 2000

memorandum, were not made clear to Mr. Callahan. (Callahan Declaration, ¶ 5)  At that time, Mr. Erwin provided Mr. Callahan with a memorandum dated November 19, 2000, detailing the standard for promotion. (Exhibit 8)  The requirements for promotion to GS-7, as stated in November 2000, included creating eight written narratives of informal contacts with park visitors and being audited by a supervisor while giving a successful formal interpretive talk. Id.

2.    The question of whether rangers were required to complete written logs to satisfy the informal criteria for promotion is in dispute.  In paragraph 18 of Defendant's Statements, Defendant contends that the rangers had to complete informal and formal criteria to be ready for promotion.  As noted in paragraphs 9 and 10 of Defendant's Statement, Defendant asserts that the informal criteria included written logs.  Plaintiff contends that there is no evidence indicating that the informal interpretive program required written logs. See supra ¶ 1.

3.    The question of whether review of competencies, including review of written logs, was required for promotion is in dispute.  In paragraph 19 of Defendant's Statement, Defendant contends that the competencies included review of informal logs.   Plaintiff contends that to the competencies did not require review of informal logs because informal logs was not required for promotion to GS-7. See supra ¶ 1.

4.    The question of whether substantive requirements for promotion to GS-7 included the completion of informal logs is in dispute.  In paragraph 35 of Defendant's Statement, Defendant cites to a February 7, 2000 memorandum and contends that submission of informal logs remained a requirement for promotion to GS-7.  Plaintiff contends that the February 7, 2000 memorandum does not provide that the "informal presentation" meant eight written logs. (Exhibit 6)  The February 7, 2000 memorandum states that the minimum standard for promotion

from GS-5 as: "Informal presentation, formal presentation, completing the site checklists". (Exhibit 6) Id.; see supra ¶ 1.

5.      The question of whether all the rangers who were promoted to GS-7 submitted informal logs is in dispute. In paragraph 38 of Defendant's Statement, Defendant contends that only those rangers who met the requirements for promotion were promoted. As noted in paragraphs 9 and 10 of Defendant's Statement, Defendant asserts that the requirements for promotion included written logs. Plaintiff contends that not all rangers promoted to GS-7 submitted informal logs. Plaintiff proffers the following evidence to support its position that the not all rangers were required to submit written logs to be promoted to GS-7.

In 2000, several GS-5 rangers were recommended for promotion to GS-7 by their supervisor and received the requested promotion. (Exhibit 7-A - 7-K) Loren Goering recommended Rachel Gomez for promotion in a memorandum dated March 8, 2000. (Exhibit 7-C) The recommendation memorandum referred to tapes of Ms. Gomez conducting formal and informal interpretation. There is no reference to Ms. Gomez submitting written logs. Id.

Mr. Erwin recommended Brain Hall for promotion in a memorandum dated March 13, 2000. (Exhibit 7-D) The recommendation memorandum noted that Mr. Hall has "demonstrated an ability to perform informal interpretation." There is no reference to Mr. Hall submitting written logs. Id. Mr. Erwin recommended Matt McNamer for promotion in a memorandum dated March 13, 2000. (Exhibit 7-G) The recommendation memorandum noted that Mr. McNamer has "demonstrated that he could perform effective informal interpretation." There is no reference to Mr. McNamer submitting written logs. Id.

Ms. Kelley recommended Jerold Hawn for promotion in a memorandum dated March 2, 2000. (Exhibit 7-E) The recommendation memorandum noted that Mr. Hawn has

"demonstrated that he can perform informal interpretation." There is no reference to Mr. Hawn submitting written logs. Id. Ms. Kelley also recommended Peter Lonsway for promotion in a memorandum dated January 12, 2000. (Exhibit 7-F) The recommendation memorandum noted that Mr. Lonsway has "demonstrated competency in Informal Interpretation." There is no reference to Mr. Lonsway submitting written logs. Id.

Plaintiff also contends that there is a genuine dispute concerning whether his supervisors neglected to certify that Mr. Callahan met the requirements for promotion. The February 7, 2000 memorandum stated that Connie Joy, the Administrative Officer, would meet with each of the park rangers' supervisors to decide whether they feel their employee has reached the stated objectives. (Exhibit 6) Mr. Callahan did not receive the attention and assistance given to other employees in obtaining their promotions. (Exhibit 7-A - 7-K; Callahan Declaration, ¶ 6)

6.    The question of whether Mr. Erwin only recommended promotions for park rangers who had completed eight written logs is in dispute. In paragraph 39 of Defendant's Statement, Defendant contends that Mr. Erwin recommended promotions based on whether the park rangers had completed time in grade, completed the eight written logs, and completed the formal interpretive talk. Plaintiff contends that not all rangers promoted to GS-7 by Mr. Erwin submitted informal logs. Mr. Erwin recommended the promotion of Mr. Hall and Mr. McNamer because both had the ability to "perform" informal interpretation". Mr. Erwin did not mention that Messrs. Hall and McNamer had submitted logs. (Exhibits 7-D and 7-G) See supra ¶ 5.

7.    The question of whether Mr. Hall met the informal interpretive requirement by submitting written logs is in dispute. In paragraph 41 of Defendant's Statement, Defendant contends that Mr. Hall met the formal and informal requirements. Plaintiff contends that there is no evidence that Mr. Hall submitted written logs. (Exhibit 7-D) See supra ¶ 6.

6

8.      The question of whether Mr. McNamer met the informal interpretive requirement by submitting written logs is in dispute. In paragraph 42 of Defendant's Statement, Defendant contends that Mr. McNamer met the formal and informal requirements. Plaintiff contends that there is no evidence that Mr. McNamer submitted written logs. (Exhibit 7-G) See supra ¶ 6.

9.      The question of whether everyone Mr. Erwin promoted to GS-7 submitted written logs is in dispute. In paragraph 45 of Defendant's Statement, Defendant contends that everyone Mr. Erwin promoted to GS-7 met the requirements for promotion. Plaintiff contends that not all rangers who were promoted submitted written logs. See supra ¶ 6. Plaintiff further notes that although there was no requirement that he submit written logs at the time that he was denied a promotion to GS-7 in 1999, he has completed eight informal logs and has provided them to his counsel. (Callahan Declaration, ¶ 7)

10.     Plaintiff's characterization of Mr. Callahan's testimony is in dispute. In paragraphs 48 through 50 of Defendant's Statement, Defendant contends that Mr. Callahan admitted that he had not met the requirements for promotion to GS-7. Plaintiff contends that the testimony cited by Defendant does not support the statements in paragraphs 48 through 50. Plaintiff acknowledged that he needed to complete the same requirements for promotion to GS-7 that applied to all park rangers (Exhibit 1, Tr. at 58-59) and that he has not written informal logs. (Exhibit 1, Tr. at 52) However, Mr. Callahan maintains that the informal logs were not a requirement for promotion to GS-7 in October 1999, when he was denied a promotion. See supra ¶ 1.

11.     The question of whether Plaintiff produced the written logs is in dispute. In paragraph 51 of Defendant's Statement, Defendant contends that Plaintiff has not produced the logs. Plaintiff contends that although there was no requirement that he submit written logs at the

time that he was denied a promotion to GS-7, he has completed eight informal logs and has provided them to his counsel. (Callahan Declaration, ¶ 7)

12.     The question of whether the requirements for promotion were noted in Plaintiff's performance plans and evaluations is in dispute. In paragraph 54 of Defendant's Statement, Defendant contends that the requirements for promotion were noted in Plaintiff's performance plans and evaluations. As noted in paragraphs 9 and 10 of Defendant's Statement, Defendant asserts that the requirements for promotion included written logs. Plaintiff contends that the evidence does not support the statement that Mr. Callahan was informed that the requirements for promotion included the submission of informal logs. Mr. Callahan's performance evaluations noted that a "goal" was to "Start collecting interpretive contacts for the Informal Interpretation Log". (Exhibit 4-A) As noted in a memorandum dated December 20, 1999, two months after Mr. Callahan first became eligible for promotion, from the Regional Director of the National Capital Region, the completion of an approved formal and informal interpretive program "while highly desirable" was "not a requirement for promotion." (Exhibit 5; Exhibit 1, Tr. at 178)

13.     The question of whether Mr. Erwin orally and in writing reiterated the requirements for promotion in 2000 is in dispute. In paragraph 55 of Defendant's Statement, Defendant contends that Mr. Erwin "reiterated" the requirements for promotion. Plaintiff contends that to the extent Defendant claims the requirements included the submission of written logs, he was not aware of such a requirement until he received a November 19, 2000 memorandum from Mr. Erwin. (Exhibit 8; Callahan Declaration, ¶ 5) See supra ¶¶ 1, 12.

14.     The question of whether Mr. Callahan's absence from work for certain period after 1999 hindered Mr. Erwin's ability to audit Mr. Callahan's formal talk is in dispute. In

paragraph 56 of Defendant's Statement, Defendant contends that Mr. Erwin's ability to audit the formal talk was hindered by Mr. Callahan's absences. Plaintiff contends that there is no evidence to support this statement. In November 2000, Mr. Erwin asked Mr. Callahan about a time to audit a formal interpretive talk and Mr. Callahan told Mr. Erwin that any time was fine. (Exhibit 1, Tr. at 37, 172) Mr. Callahan never told Mr. Erwin that he did not want the audit to occur at a particular time. (Exhibit 1, Tr. at 38, 42) Although Mr. Callahan was on extended leave for parts of 1999 and 2000 due to illness, he returned to work in early summer 2000. (Exhibit 1, Tr. at 44-45) Furthermore, as a GS-5 in 1999 and 2000 Mr. Callahan had been giving numerous formal and informal interpretive talks and has served as lead ranger, often over other rangers in grade GS-9, 52 times. (Exhibit 1, Tr. at 44) However, Mr. Erwin did not perform such an audit until May 2002. The audit report shows that Mr. Callahan's formal interpretive talk was successful and described the talk as "outstanding". (Exhibit 9)

15.    The question of whether Mr. Callahan's absence from work during periods in December 2000 through April 2001 prevented Mr. Erwin from meeting with Mr. Callahan to discuss his progress on the informal and formal interpretative requirements is in dispute. In paragraphs 57 and 58 of Defendant's Statement, Defendant contends that Mr. Callahan's absences prevented Mr. Erwin from meeting with him. Plaintiff contends that he was available to meet with Mr. Erwin after April 2001 when he returned to work.

Respectfully submitted,

GREENBERG TRAURIG, LLP

Steven M. Schneebaum, DC Bar No. 956250
Debra McGuire Mercer, DC Bar No. 439233
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, D.C.  20006
(202) 331-3100
(202) 331-3101

Attorneys for Plaintiff George G. Callahan

January 17, 2007

10

## **CERTIFICATE OF SERVICE**

I hereby certify that service of the foregoing Plaintiff's Opposition to Motion for Partial Summary Judgment and to Strike, Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Motion for Partial Summary Judgment and to Strike, Statement of Genuine Issues of Material Fact, and Proposed Order was accomplished through the Court's electronic transmission facilities on this 17th day of January 2007.

Debra McGuire Mercer